**In re BROADHOLLOW FUNDING CORP., Debtor.**

**In re MJC HOLDING CORP., Debtor.**

**BROADHOLLOW FUNDING CORP. and MJC Holding Corp., Plaintiffs,**

v.

**Daniel FITZMAURICE, Dennis Connor, Jack Holchendler, Robert L. Rubel, D.D.S., Baskin Planning Consultants Ltd., Stephanie Rogers Hose, Northern Motor Inn, Inc. and Manhattan Financial Services, Inc., individually and on behalf of others similarly situated, Defendants.**

**Bankruptcy Nos. 885–51958–18, 885–51959–18.**

**Adv. No. 886–0226–18.**

United States Bankruptcy Court, E.D. New York.

Nov. 18, 1986.

Summit, Rovins & Feldesman, New York City, for debtors.

Otterbourg, Steindler, Houston & Rosen, P.C., New York City, for Creditors Committee and counsel for the class.

David S. Haberman, Garden City, N.Y., and Sidney Turner, P.C., White Plains, N.Y., co-counsel to the subclass.

## DECISION & ORDER

C. ALBERT PARENTE, Bankruptcy Judge.

Broadhollow Funding Corp. ("Broadhollow"), the debtor, seeks the certification of a class of defendants pursuant to F.R. Civ.P. 23. Once certified, the class will be represented by the named defendants in an adversary proceeding brought by plaintiffs to determine the equitable ownership of a large portfolio of mortgages held by the debtor.

BACKGROUND

From its inception in 1971, Broadhollow was engaged in the business of brokering second mortgages of real property. The debtor acted as originating and servicing agent of the loans, earning revenue both from commissions on loan closings and the difference between the interest rate charged mortgagors and the rate of interest paid to investors.

The incidence of the filing of a petition under Chapter 11 by the debtor has engendered considerable acrimony between it and many of its investors. All investors placed substantial sums of money with the debtor in the expectation of earning between fifteen and eighteen percent interest per annum. The debtor brought the instant adversary proceeding seeking a declaratory judgment to resolve the equitable ownership of the mortgages, thereby enabling it to move forward with its plan of reorgani-

zation. In the interest of judicial economy, the debtor requests the certification of a defendant class to achieve this end.

The court is empowered to certify a class pursuant to Bankruptcy Rule 7023, which states: "Rule 23 F.R.Civ.P. applies in adversary proceedings." Thus, the bankruptcy court may certify a class if it "meets the four prerequisites of Rule 23(a), plus one of the three requirements of Rule 23(b)." *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 2369–70, 72 L.Ed.2d 740 (1982); *Gill v. Monroe County Dep't. of Social Services,* 79 F.R.D. 316, 325 (W.D.N.Y.1978).

The issue of class certification has arisen in several bankruptcy proceedings. *In re REA Express, Inc.,* 10 B.R. 812 (Bankr.S. D.N.Y.1981) (certification of a class of claimant employees); *Lee v. Board of Higher Educ.,* 1 B.R. 781 (Bankr.S.D.N.Y. 1979) (certified a class to avoid inconsistent adjudication); *O'Connell v. David,* 35 B.R. 146 (Bankr.E.D.Pa.1983) (certification denied because vigorous representation requirement was not met), *aff'd mem.,* 740 F.2d 958 (1984); *Federal Deposit Ins. Corp. v. United States,* 527 F.Supp. 942 (S.D.W.Va.1981) (denied certification based on Rule 23(a)(4)). In rare instances, the bankruptcy court has certified a defendants' class. *In re Braniff Airways, Inc.,* 22 B.R. 1005 (Bankr.N.D.Tex.1982); *Guy v. Abdulla,* 57 F.R.D. 14 (N.D.Ohio 1972).

The authority to certify a defendants' class is derived from F.R.Civ.P. 23(a) which provides: "One or more members of a class may sue *or be sued* as representative parties on behalf of all . . . ." F.R.Civ.P. 23(a). (Emphasis added.)

Courts have construed the language of Rule 23(a) according to its plain meaning. *Bradford Trust Co. v. Wright,* 70 F.R.D. 323, 325 (E.D.N.Y.1976); *Commonwealth v. Local Union 542, Int'l. Union of Operating Eng'rs.,* 469 F.Supp. 329, 416 (E.D. Pa.1978), *rev'd. on other grds.,* 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982). Defendant classes have been certified where there is a need for a "procedural device that allows one who has a common grievance against a multitude of persons to resolve the . . . dispute by suing only a few members of the 'class.'" Walpen, *Defendant Class Actions,* 38 Ohio L.J. 459, 459 (1977); *Defendant Class Actions,* 91 Harv. L.Rev. 630 (1978). The use of a defendant class avoids costly multiple litigation and the danger of inconsistent adjudication of the same issue. *Defendant Class Actions,* 91 Harv.L.Rev. 630 (1978). *See, Califano v. Yamasaki,* 442 U.S. 682, 700–01, 99 S.Ct. 2545, 2557–58, 61 L.Ed.2d 176 (1979); *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 2369–70, 72 L.Ed.2d 740 (1982).

This is a classic case epitomizing the need for the certification of a defendant class. Once the issue of equitable ownership is adjudicated, the decision will bind all parties and avoid the costly multiplicity of litigation which class actions were designed to prevent. Even if multiple litigation did not present the danger of inconsistent results, the cost of the litigation would deplete the assets of the bankruptcy estate, thereby rendering reorganization doubtful, if not impossible. Therefore, consistent with the facts of the case and the policy underlying F.R.Civ.P. 23, and upon the ratiocination following, the court finds that the certification of a defendant class is warranted.

## FINDINGS OF FACT

On January 29, 1986, the court approved an application to retain the accounting firm of Frank Zolfo & Co. ("F.Z. & Co.") to perform accounting services for the debtor. Pursuant to that order, F.Z. & Co. placed Michael France, a certified management consultant, in charge of examining the books and records of Broadhollow. France's investigation and reports reveal that the funds of 1,023 investors were accepted by the debtors between 1975 and December 20, 1985, the date the debtor filed a Chapter 11 bankruptcy petition. All investors signed one of two agreement forms which were identical in substance if not form and which stated, *inter alia,* that the accepted funds would be invested in mortgages by Broadhollow.

At the time the petition was filed, 449 investors representing an aggregate investment of $4,646,118 did not have their investments identified with any mortgage, while 144 investors with an aggregate investment of $6,090,170 had a portion of their investments identified with mortgages and 430 investors representing an aggregate investment of $7,381,092 had all of their investments identified with mortgages.

The investors' funds were deposited into one or more general Broadhollow accounts, leading to a commingling of all investment funds. Of the 451 mortgages placed by the debtor in the aggregate amount of $13,446,197, 67% are in arrears.

Since filing the bankruptcy petition, two adversary proceedings have been commenced by three investors whose names appear on two mortgages. These investors seek the turnover of these mortgages pursuant to 11 U.S.C. § 541(d). In addition, approximately 35 investors have moved pursuant to 11 U.S.C. § 541(d), to determine the equitable ownership of the mortgages which bear their names.

As a causal consequence of the pending action, Broadhollow, on August 26, 1986, filed a complaint naming as defendants all eight investor/members of the Creditors Committee both individually and as representatives of a class of all investors. Mr. Fitzmaurice, an investor member of the Creditors Committee, subsequently resigned from the Creditors Committee, but continues as a named defendant.

DISCUSSION

■ It is axiomatic that before a court may certify a class it must determine as a threshold question the existence of a distinct recognizable class. *Esler v. Northrop Corp.*, 86 F.R.D. 20, 32 (W.D.Mo. 1979); 7A Wright, Miller, Kane, *Federal Practice and Procedure*, § 1760 at 115 (1986); 3B *Moore's Federal Practice*, ¶ 23.04[1] at 23-111 (2d 1985). Ascertainment of a class poses a question of fact posited on the circumstances of each case. 7A Wright, Miller, Kane, *Federal Practice and Procedure*, § 1760 at 115–16 (1986).

It is the issues common to the class that makes it "administratively feasible for the court to determine whether a particular individual is a member [of the class]." 7A Wright, Miller, Kane, *Federal Practice and Procedure*, § 1760 at 121 (1986).

In the case at bar, the members of the class are identified as 1,023 investors in Broadhollow between 1975 and December 20, 1985. Substantial similarities exist among the investors. For example, all investors received the same written pamphlet describing the debtor and the scope of its business activity. All investors signed one of two similar agreements setting forth, *inter alia*, the amount of their investment and the per annum interest rate that they would receive. Moreover, regardless of the amount of the investment, all funds were commingled and merged in the debtor's bank accounts. Consequently, this court finds that the threshold requisite has been met and a distinct identifiable class is certifiable subject to satisfying the four requirements of Rule 23(a) and one of the requirements of Rule 23(b), *Commonwealth v. Local U. 542, Int'l. Union of Operating Eng'rs.*, 469 F.Supp. 329, 414 (E.D.Pa.1978), *rev'd. on other grds.*, 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982).

*F.R.Civ.P. 23(a)(1)—Numerosity Factor*

F.R.Civ.P. 23(a)(1) provides that the class must be "so numerous that joinder of all members is impracticable." "Impracticable" has been interpreted to mean extremely difficult or inconvenient but not necessarily impossible. 7A Wright, Miller, Kane, *Federal Practice and Procedure*, § 1762 at 159 (1986). It "is a subjective determination based on number, expediency and inconvenience of trying individual suits." *Pabon v. McIntosh*, 546 F.Supp. 1328, 1333 (E.D.Pa.1982). The actual number of individuals necessary to satisfy the requirement has been broadly construed, so that while seven members were too few, *Tate v. Weyerhaeuser Co.*, 723 F.2d 598 (8th Cir.1983), *cert. denied*, 469 U.S. 847, 105 S.Ct. 160, 83 L.Ed.2d 97 (1984), twenty-five members met the requirement. *Phila-*

*delphia Elec. Co. v. Anaconda American Brass Co.,* 43 F.R.D. 452, 463 (E.D.Pa. 1968); *see also, Northwestern Nat'l. Bank of Minneapolis v. Fox & Co.,* 102 F.R.D. 507, 510 (S.D.N.Y.1984) (class of 300); *In re the Gap Stores Securities Litigation,* 79 F.R.D. 283, 302 (N.D.Cal.1978) (class of 91); *Weiss v. York Hosp.,* 745 F.2d 786, 807-08 (3rd Cir.1984), *cert. denied,* 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985) (class of 92); *Esler v. Northrop Corp.,* 86 F.R.D. 20 (W.D.Mo.1979) (class of 186).

All parties herein concede that a class consisting of 1,023 persons adequately satisfies the numerosity requirement of Rule 23(a)(1). Furthermore, if joinder of a group of this size is not impossible, it is at least impracticable and impracticability is the standard of measure used in Rule 23(a)(2). *Pabon v. McIntosh,* 546 F.Supp. 1328, 1333 (E.D.Pa.1982). Therefore, the numerosity requirement of Rule 23(a)(1) is met.

*F.R.Civ.P. 23(a)(2)—Commonality Factor*

The second prerequisite of Rule 23(a) requires "questions of law or fact common to the class." Rule 23(a)(2), F.R.Civ.P. Courts have given this section a liberal interpretation requiring only that class members share "one or more significant common question[s] of law or fact." *Esler v. Northrop Corp.,* 86 F.R.D. 20, 34 (W.D. Mo.1979); 7A Wright, Miller, Kane, *Federal Practice and Procedure,* § 1763 at 199 (1986). One court has even suggested that the "commonality" requirement is superfluous. *Vernon J. Rockler & Co. v. Graphic Enterprises, Inc.,* 52 F.R.D. 335, 340 n. 9 (D.Minn.1971). This line of reasoning was rejected by the Supreme Court in *General Telephone Co. of the Southwest v. Falcon* when it reiterated its position that "careful attention to the requirements of Fed.Rule Civ.Proc. 23 remains ... indispensable." *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 2369-70, 72 L.Ed.2d 740 (1982) (citing *East Texas Motor Freight v. Rodriquez,* 431 U.S. 395, 405-06, 97 S.Ct. 1891, 1897-98, 52 L.Ed.2d 453 (1977)).

At the time of their investment in Broadhollow all members of the proposed defendant class signed one of two standard agreements containing similar terms. All received the debtor's pamphlet which described its activities in mortgage investments including the manner in which mortgage loans were processed. All investment funds received by the debtor were treated in the same manner, with all funds commingled in the debtor's bank accounts. Rule 23(a)(2) does not require a class of clones in which members are identical in all respects. *In re REA Express, Inc.,* 10 B.R. 812 (Bankr.S.D.N.Y.1981) (claims within the class ranged from $500 to $1,200). Therefore, a variance in the size of investment or the annual interest rate does not defeat class certification.

*F.R.Civ.P. 23(a)(3)—Typicality Factor*

The two remaining requirements of Rule 23(a), shift focus from the characteristics of the class members to the characteristics of the named representatives. *Edmondson v. Simon,* 86 F.R.D. 375, 380 (N.D.Ill.1980); 3B *Moore's Federal Practice,* ¶ 23.06-2 at 23-191 (2d 1985). Rule 23(a)(3) requires that "the claims or defenses of the representative party ... [be] *typical* of the claims or defenses of the class." (Emphasis added.) Typicality is achieved when the defenses of the class representatives are the same as the defenses of class members. 3B *Moore's Federal Practice,* ¶ 23.06-2 at 23-191 (2d 1985). This occurs where the same event, practice, or course of conduct has given rise to the defense of the class members and their named representatives. *Edmondson v. Simon,* 86 F.R.D. at 380 (N.D.Ill.1980).

Plaintiffs contend, and the court agrees, that on the facts of this case the typicality requirement of Rule 23(a)(3) has been met. Broadhollow's conduct toward all class members, including named defendants, was the same. All funds collected by Broadhollow were commingled; all agreements between investors and Broadhollow are substantially the same; all investors were subject to the same written inducements to

invest. Nevertheless, the court finds merit in the argument of a group of defendants, associated with mortgages, contending that they will be inadequately represented if a class composed of *all* Broadhollow investors is certified. They argue for the turnover of mortgages bearing their names, while defendants in the action, whose names are not associated with mortgages, argue for declaratory judgment adjudicating Broadhollow the equitable owner of all mortgages it now holds.

Although these groups are in conflict over the remedy sought, class certification need not be denied. *Gill v. Monroe County Dep't of Social Services*, 79 F.R.D. 316 (W.D.N.Y.1978); *Smith v. B. & O. Railroad Co.*, 473 F.Supp. 572, 581 (D.Md.1979). A "variety of defendant class representatives enhances the probability of typicality of defenses being present." H. Newberg, *On Class Actions (Second)*, § 4.57 at 396 (1986). Congress provided for intraclass conflict by including (c)(4)(B) in Rule 23. F.R.Civ.P. 23(c)(4)(B) states:

> When appropriate: ... a class may be divided into subclasses and each subclass treated as a class and the provisions of this rule shall then be construed and applied accordingly.

F.R.Civ.P. 23(c)(4)(B).

■ Pursuant to Rule 23(c)(4)(B), the court has the power to divide a class into subclasses when "all members of the class ... challenge the same conduct of the ... [plaintiff, although] their specific interests and legal theories may be different." *Manual for Complex Litigation (Second)*, § 30.16 at 216 (1985); 3B *Moore's Federal Practice*, § 23.65 at 23–474 (2d 1985). The court may *sua sponte* divide the class into subclasses when important rights are at stake. *Marcello v. Regan*, 574 F.Supp. 586 (D.R.I.1983); *Geraghty v. United States Parole Commission*, 579 F.2d 238, 253 (3rd Cir.1978), *vacated on other grds.*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). "It is appropriate to invoke subclassification when there are or may be divergent views among the class members and when the Court believes that subclasses would materially improve the presentation of all relevant considerations." *Mendoza v. United States*, 623 F.2d 1338, 1350 (9th Cir.1980), *cert. denied*, 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1980). Judicial awareness of intraclass conflict prompts this court to certify a subclass comprised of the 574 defendant/investors named on mortgages.

■ For proper certification of a subclass, all requirements of Rule 23(a) must be met as well as at least one section of Rule 23(b). *Monarch Asphalt Sales Co., Inc. v. Wilshire Oil Co. of Texas*, 511 F.2d 1073 (10th Cir.1975); *Mendoza v. United States*, 623 F.2d at 1349 (9th Cir.1980); *cert. denied*, 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1980); *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir.1974); *Marcello v. Regan*, 574 F.Supp. at 592 (D.R.I.1983); *Manual for Complex Litigation (Second)*, § 30.16 at 216 (1985). This subclass meets the numerosity (575 members), commonality (see *supra* at 9–10) and typicality (all members are associated with mortgages) requirements by its definition and description. Members of the subclass are included among the named defendants in the persons of David Fitzmaurice and Dennis Connor, thus insuring the subclass' representation in the action. *In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1129 n. 38 (7th Cir.), *cert. denied sub. nom.*, *General Motors Corp. v. Oswald*, 444 U.S. 870, 100 S.Ct. 146, 62 L.Ed.2d 95 (1979).

### F.R.Civ.P. 23(a)(4)—Representation Factor

■ Considerations of representation overlap both sections (a)(3) and (a)(4) of Rule 23. H. Newberg, *On Class Actions (Second)*, § 3.22 at 199 (1986). Rule 23(a)(4), at the very heart of the matter, provides: "the representative parties will fairly and adequately protect the interests of the class." F.R.Civ.P. 23(a)(4). The essence of this prerequisite is a due process requirement. *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940); A. Miller, *An Overview of Federal Class Ac-*

*tions: Past, Present, and Future (Second)* at 28 (1977) (hereinafter *"Overview"*). "American jurisprudence has always operated under the principle that each litigant is entitled to a day in court regarding ... a defense to a grievance against him." A. Miller, *Overview*, at 28. In a defendant class action, care must be taken to ensure that the representative parties' actions provide each class member with his or her promised "day in court." The court must ascertain whether the plaintiff has named "weak" defendants, who either have insufficient resources available for a proper defense of the action, or who have stakes in the action, so small that they are not worth defending at all. H. Newberg, *On Class Actions*, § 4.58 at 397 (1986). Furthermore, the court must be satisfied that collusion does not exist between the plaintiff and the named defendants. H. Newberg, *On Class Actions*, § 4.58 at 397; S. William, *Some Defendants Have Class: Reflections on the GAP Securities Litigation*, 89 F.R.D. 287, 290–91 (1980) (hereinafter *"Defendants Have Class"*). Named defendants often object strenuously to the burden imposed by representative status. Ironically "a defendant class representative [who] vigorously opposes his representative status may prove his ability to be an adequate class representative since he may reveal the capability to present an effective adversary position." S. William, *Defendants Have Class*, at 291. These named defendants have proven their willingness to represent the class through their participation on the Creditors Committee. In that capacity, they serve as fiduciaries with court approval. *See generally*, H. Newberg, *On Class Actions*, § 20.01 at 581 (analogy of class representation to the function of a Creditors Committee); *Strategic Bankruptcies: Class Action, Classification and the Dalkon Shield Cases*, 7 Cardozo L.Rev. 817, 817–18 (1986). In addition, Fitzmaurice and Connor, named representatives of the subclass, indicated their willingness to litigate the issue now before the court, when they brought the Section 541(d) action seeking turnover of the mortgages which bear their names.

In determining the adequacy of representation, the court's inquiry should include the extent of the representatives' financial interest in the action. *Esler v. Northrop Corp.*, 86 F.R.D. 20, 36 (W.D.Mo.1979); *National Ass'n. of Regional Medical Programs, Inc. v. Matthews*, 551 F.2d 340, 345, n. 23 (C.A.D.C.1976) *cert. denied*, 431 U.S. 954, 97 S.Ct. 2674, 53 L.Ed.2d 270 (1977).

The named defendants have an aggregate investment of $1,167,345 in Broadhollow, representing six percent of the total outstanding indebtedness of the plaintiff. Eighty-three percent of the investment ($969,987) is identified with mortgages. All named defendants but one, are identified both with mortgages and open accounts. The defendant not included with the others has his entire investment of $276,000 identified with mortgages. The court is convinced that the named defendants are not likely to abandon these substantial investments without a vigorous defense. *In re Home-Stake Production Co. Securities Litigation*, 76 F.R.D. 351, 368 (N.D.Okla.1977).

Due to the high cost of defending an action, the court must also determine if the named defendants have sufficient financial resources to carry the burden of litigation. *P.D.Q., Inc. of Miami v. Nissan Motor Corp. in U.S.A.*, 61 F.R.D. 372 (S.D.Fla. 1973), *aff'd. as modified*, 577 F.2d 910 (5th Cir.1978), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979); *Ralston v. Volkswagenwerk, A.G.*, 61 F.R.D. 427, 433 (W.D.Mo.1973); 7A Wright, Miller, Kane, *Federal Practice and Procedure*, § 1767 at 321 (1986); A. Miller, *Overview*, at 33.

In the case at bar, named defendants have indicated their willingness to defend the action through participation on the Creditors Committee. In addition, two defendants are litigants in the 11 U.S.C. § 541(d) proceeding before this court. These actions indicate their tacit acceptance of the financial responsibilities commensurate with the cost of litigation.

Moreover, at the hearing on September 25, 1986, defendants were represented by

three separate sets of counsel. The Creditors Committee was represented by Otterbourg, Steindler, Houston & Rosen, P.C. (hereinafter "Otterbourg, Steindler"), while thirty-seven defendants, associated with mortgages, were represented by two attorneys (David Haberman, Esq. and Sidney Turner, Esq.), retained at the litigants' own expense. Defendants have indicated that they are business persons with an understanding of the costs involved in sustaining a legal action.

In holding that both the class and subclass meet the representation requirement of Rule 23(a)(4), the court must determine if "the party's attorney [is] ... qualified, experienced and generally able to conduct the proposed litigation." *Mack v. General Electric Co.*, 329 F.Supp. 72, 76 n. 3 (E.D. Pa.1971); (citing *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir.1968)); *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122, 1125 (5th Cir.1969); *Elkind v. Liggett & Myers, Inc.*, 66 F.R.D. 36, 42 (S.D.N.Y.1975). As a general rule, the court should satisfy itself that the attorney is experienced in handling the type of litigation before it. A. Miller, *Overview*, at 35. However, "[u]ntil the contrary is demonstrated courts will assume that members of the bar are skilled in their profession." *Dolgow v. Anderson*, 43 F.R.D. 472, 496 (E.D.N.Y.1968), *reh'g. granted on other grounds*, 438 F.2d 825 (2d Cir.1971); *Rodriguez v. Swank*, 318 F.Supp. 289 (N.D. Ill.1970), *aff'd. mem.*, 403 U.S. 901, 91 S.Ct. 2202, 29 L.Ed.2d 677 (1971); *Illinois v. Harper & Row Publishers, Inc.*, 301 F.Supp. 484 (N.D.Ill.1969).

Haberman, Turner and Otterbourg, Steindler, all respected members of the bar, argued vigorously at the hearing, knowledgeably representing the positions of their clients. The memoranda of law before the court indicate that all understand the requirements of class certification as well as the issues in the underlying action. Therefore, the court finds that Haberman and Turner will, as co-counsel, provide adequate representation for the subclass, while Otterbourg, Steindler will provide proper representation for the certified class.

### F.R.Civ.P. 23(b)(3)—Class Action Preferable

■ Having met all of the prerequisites of Rule 23(a), the last remaining obstacle to class certification is meeting *any one* of the requirements of Rule 23(b). Rule 23(b) provides:

*Rule 23(b) Class Actions Maintainable* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D)

the difficulties likely to be encountered in the management of a class action.

"If an action can be maintained under (b)(1) and/or (b)(2), and also under (b)(3), the court should order that the suit be maintained as a class action under (b)(1) and/or (b)(2), rather than under (b)(3), to insure that the judgment will have res judicata effect as to all of the class." 3B *Moore's Federal Practice*, ¶ 23.31 [3] at 23–262 (2d 1985); *Kyriazi v. Western Electric Co.*, 647 F.2d 388 (3rd Cir.1981); *Reynolds v. National Football League*, 584 F.2d 280 (8th Cir.1978); A. Miller, *Overview*, at 41 (1977). If this action were certified under Rule 23(b)(3), the members of the class could "opt out" pursuant to Rule 23(c)(2), vitiating the certification process and undermining the chances that this litigation will resolve the common issue. *Thillens Inc. v. Community Currency Exchange Assoc. of Illinois*, 97 F.R.D. 668, 682 (N.D. Ill.1983). The court has ample grounds to certify the class under (b)(1), therefore it denies certification under (b)(3).

*F.R.Civ.P. 23(b)(1)—Class Action Required*

Rule 23(b)(1) is divided into two sections. Section (b)(1)(A) focuses on the nonclass party while section (b)(1)(B) focuses on potential class members. A class is certified pursuant to section (b)(1)(A) if "inconsistent or varying adjudications with respect to individual members of the class ... would establish incompatible standards of conduct for the party opposing the class." F.R. Civ.P. 23(b)(1)(A). There must be a danger that multiple litigation would leave the nonclass party in a stalemated or conflicted position. A. Miller, *Overview*, at 44 (1977).

The court in *Guy v. Abdulla*, 57 F.R.D. 14 (N.D.Ohio 1972), certified a defendant class under Rule 23(b)(1)(A) to enable the trustee in bankruptcy to maintain an action against all parties allegedly holding voidable preferences and/or property transferred by fraudulent conveyances. *Id.* The class was certified pursuant to (b)(1)(A) to insure that separate proceedings would not result in inconsistent adjudication of the common issues, thus leaving the trustee in a stalemated position. *Guy v. Abdulla*, 57 F.R.D. at 17 (N.D.Ohio 1972). Two separate actions on the common issue are pending before this court. The debtor will be unable to act on the turnover of mortgages if a decision in one action requires the delivery of those mortgages to the successful litigants, while a contrary result is reached in the second litigation. Reorganization would be impossible under such circumstances. Consequently, the requirements of Rule 23(b)(1)(A) are met and a class and subclass are certified pursuant to that section.

Although the court could end its analysis at this juncture, it finds that certification is also appropriate under Rule 23(b)(1)(B).

Rule 23(b)(1)(B) states:

*Rule 23(b) Class Actions Maintainable*

An action may be maintained as a class action if ...

\*   \*   \*   \*   \*   \*

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

If the section 541(d) movants prevail in their individual claims, the disposition would impair the interests of other, nonparty investors whose commingled funds were invested in or whose names appear jointly on these mortgages. As a practical matter, the absent investors would be affected without benefit of representation in any action. *Horton v. Goose Creek Independent School Dist.*, 677 F.2d 471, 491 n. 52 (5th Cir.1982); *Esler v. Northrop Corp.*, 86 F.R.D. 20, 38 (W.D.Mo.1979); 7A Wright, Miller, Kane, *Federal Practice and Procedure*, § 1774 at 437 (1986). The case at bar is analogous to cases in "which the class members have claims against a common fund that may prove insufficient to satisfy all of them." 7A Wright, Miller, Kane, *Federal Practice and Procedure*, § 1774 at 441 (1986); *Zeffiro v. First Pennsylvania Banking & Trust Co.*, 96 F.R.D.

567, 573 (E.D.Pa.1983); *Esler v. Northrop Corp.,* 86 F.R.D. 20, 38 (W.D.Mo.1979). As with a common fund, the number of mortgages is finite and distribution to prevailing litigants would impact adversely on investors not named as parties. Furthermore, although Rule 23(b)(2) refers specifically to declaratory relief, Rule 23(b)(1)(B) also is applicable since "an individual action seeking relief of that type clearly would affect the interests of all class members." 7A Wright, Miller, Kane, *Federal Practice and Procedure,* § 1774 at 446 (1986). Consequently, this court finds that the class and subclass have met the requirements of both (b)(1)(A) and (B) and are therefore certified pursuant to those sections of F.R. Civ.P. 23.

CONCLUSIONS OF LAW

Class certification is ordered for a class consisting of all 1,023 investors in Broadhollow between 1975 and December 20, 1985. A subclass is certified consisting of those 575 members of the class whose names are associated with mortgages held by Broadhollow.

Counsel for the debtor/plaintiff is ordered to cooperate with counsel for the Creditors Committee to ensure that individual notice of the proceeding is periodically given to all investors. Furthermore, counsel for the debtor/plaintiff is ordered to serve all papers upon Otterbourg, Steindler, counsel for the class, and Messrs. Haberman and Turner, counsel for the subclass.

IT IS THEREFORE ORDERED, based on the foregoing findings of fact and conclusions of law, that plaintiff's motion for class certification is hereby granted under Rule 23(b)(1)(A) and 23(b)(1)(B).

IT IS FURTHER ORDERED, that the stays imposed on individual investors' actions be continued pending a final adjudication on the merits of this class action proceeding; that the trial date of October 9, 1986, previously set by the court by endorsement of the summonses in the class action be adjourned *sine die* and that counsel for all parties appear before the court on December 11, 1986, at 10:00 a.m. pursuant to Rule 7016 of the Bankruptcy Rules to consider rescheduling of further proceedings herein.