In re BRANIFF AIRWAYS, INC., et al, Debtors.

BRANIFF AIRWAYS, INC.; Braniff Airways, Inc.—IAM Pension Plan; and Alan K. Stewart, William C. Oliver and Steven S. Turoff, Constituting the Retirement Committee of the Plan, Plaintiffs,

v.

INTERFIRST BANK, DALLAS, N. A. as Trustee; and S. E. Edmondson, F. C. Irvin, and R. L. Chapman on their own behalf and on behalf of all Plan Beneficiaries, and Pension Benefit Guaranty Corporation, Defendants.

BRANIFF AIRWAYS, INC.; Air Line Pilots Association, International; Braniff Airways, Inc., Retirement Plan for Pilots, Part A; Dale States, Jack Boisen, John Skiba and Richard Russell, constituting the Retirement Board of Braniff Airways, Inc. Retirement Plan for Pilots, Part A, Plaintiffs,

v.

BANKERS TRUST COMPANY as Trustee; and W. P. McDonald, V. A. Cebell, III, N. G. Robinson and V. A. Quattlebaum on their own behalf and on behalf of all Plan Beneficiaries, and Pension Benefit Guaranty Corporation, Defendants.

BRANIFF AIRWAYS, INC., and the Braniff Airways—Teamsters Pension Plan, Plaintiffs,

v.

INTERFIRST BANK, DALLAS, N. A. Trustee; and H. G. Cooper, J. M. James, and I. C. Simpson, on behalf of all Plan Beneficiaries, and Pension Benefit Guaranty Corporation, Defendants.

BRANIFF INTERNATIONAL CORP.; Braniff Airways, Inc.; Retirement Plan for Management Employees of Braniff Airways, Inc.; and Alan K. Stewart, William C. Oliver, and Steven S. Turoff, constituting The Retirement Committee of the Plan, Plaintiffs,

v.

INTERFIRST BANK, DALLAS, N. A. as Trustee; and Thomas P. Robertson, R.

G. Peterson and K. L. Mullick on their own behalf of Plan Beneficiaries, and Pension Benefit Guaranty Corporation, Defendants.

Bankruptcy No. 482–00369.

Adv. Nos. 482–00336 to 482–00339.

United States Bankruptcy Court, N. D. Texas, Fort Worth Division.

Sept. 20, 1982.

See also Bkrtcy., 22 B.R. 1001.

## MEMORANDUM OPINION

JOHN FLOWERS, Bankruptcy Judge.

On August 20, 1982, Braniff Airways, Inc., in its capacity as Debtor and as plan administrator under certain pension plans (the Plans), and the other plan administrators filed these four actions seeking declaratory, injunctive and interim relief in this court naming the trustees of each of the four plans and representative members of certain groups of beneficiaries under each plan as defendants. In their complaints Plaintiffs requested that this court certify each action as a class action; issue an interim order authorizing a reduction in the amounts to be received by each of the Plans' beneficiaries for the month of September; hold, on an expedited basis, a trial on the merits and issue a permanent injunction setting May 12, 1982 as the effective termination date for the Plans.

Prior to class certification a hearing was held on August 26th and 27th regarding the level of the September 1st payments to be made to the beneficiaries under the Plans. It was this court's decision to reduce the level of payments in two of the plans and to leave payments at promised levels in the other two (Memorandum Opinion of August 31, 1982). 22 B.R. 1001 (Bkrtcy.1982).

On September 16, 1982 Plaintiffs formal motion for class certification under F.R.C.P. 23 and various motions by defendants regarding dismissal of the proceeding and denial of class certification came on to be heard. This court made tentative appointments of counsel for various unrepresented alleged classes for the purpose of representation during the hearing on this motion.

These cases are not formally consolidated but because of the commonality of the legal points in each case, the need for an expedited hearing and in the interest of judicial economy all four cases were heard at the same time and this memorandum opinion is written with respect to each of them.

Plaintiffs rely on the evidence presented during the hearing on August 26th and 27th

to support class certification. Plaintiffs position is that this action involving the four pension plans is the "quintessential" case for certification as a class action.

Arguments were presented by the Defendants in the Pilots (including lump sum claimants), IAM, and IBT plans that this case should be dismissed for various reasons. With respect to the argument for dismissal on the basis that this court is without subject matter jurisdiction as a result of the Supreme Court's Decision in *Northern Pipe Line Construction Company v. Marathon Pipeline Co.* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) I adhere to my prior ruling and deny the motion. The Supreme Court stayed the effect of its decision until October 4, 1982.

As to the argument for a dismissal under Rule 12(b)(7) of the Federal Rules of Civil Procedure because Plaintiffs failed to join the Pension Benefit Guaranty Corporation (the PBGC) as an indispensible party, this was remedied prior to the hearing when Plaintiffs on September 15, 1982, by Amended Complaints joined the PBGC as a named defendant.

■ The defendants further argue that this court should take no action until such time as the PBGC has acted and the procedures under The Employees Retirement Income Security Act (ERISA) have been followed and come to a natural conclusion. 29 U.S.C. § 1132 gives the fiduciary plan administrators the right to bring suit for equitable relief when faced, as here, with the impossible situation of trying to fulfill their obligations to *all* of the beneficiaries under the Plans. While ERISA does set forth a procedural process it fails to set a timetable or framework for the fiduciary. Clearly in a situation such as here, where the passing of time will have an adverse effect on the Plans and the plan administrators as fiduciaries, they are not required to wait, to their potential detriment, until these administrative procedures have been exhausted. The fiduciary's role is a discretionary one coupled with obligations to the beneficiaries under the Plans. Under the facts here the fiduciary's request for inter-

im relief is both proper and consistent with its responsibilities and obligations as fiduciary. Plaintiffs' request for a ruling that May 12, 1982, be set as the termination date anticipated the PBGC would not agree to such date when it formally announced its determination. This does not constitute grounds for dismissal under the facts presented here. After arguments and prior to this opinion being entered the PBGC officially set August 30th as the termination date for all plans except the pilots. The determination for the pilots' plan is imminent. The controversy as to the three plans is now ripe and to order dismissal of the pilots plan when that issue will be joined in the very immediate future would cause unnecessary expense and delay to all parties and serve no sensible end. Further, ERISA gives plaintiffs the right to petition the court for determinations of fiduciary responsibilities or plan enforcement at any time. 29 U.S.C. § 1132(2), (3). The evidence presented at the August 26th and 27th hearings indicated that the Plaintiffs had been negotiating with the PBGC regarding the termination date since shortly after May 13, 1982, and were unable to reach an agreement precipating the notice of termination instituted by the plan administrators.

■ The defendants further argue that the act of terminating the plans is a violation of the collective bargaining agreements between the Debtor and the unions in violation of the Railway Labor Act, 45 U.S.C. § 151 et seq., and specifically section 152 (Seventh). Each collective bargaining agreement requires the establishment and maintenance of a pension plan. Each plan gives the plan administrator the right to terminate the plan. ERISA also gives the plan administrator the right to initiate termination of the plan. 29 U.S.C. § 1341. While the failure to maintain the pension plans may be a violation of the collective bargaining agreements, it is not grounds to dismiss this action. Violation of the agreements is not the same as rejection. Many executory contracts are violated but not rejected. Indeed, § 365 of the Bankruptcy

Code contains provisions in the event a debtor seeks to assume an executory contract which has been breached. Violation of the agreements or their rejection may trigger other statutory provisions. The plan administrators in their fiduciary capacity are not parties to the collective bargaining agreements and their actions are consistent both with their respective plans and ERISA. The debtor and all the unions shied away from taking the position that they were urging acceptance or rejection at this time, so that is not currently an issue between them. Accordingly, the motions to dismiss on these grounds are also denied.

■ Finally, the IBT and IAM argue that plaintiffs have failed to state a claim for which relief can be granted. They take this position because the funds in their particular plans are so low that all participants will only receive guaranteed PBGC minimums, therefore they assert that only the PBGC and not the debtor are damaged. However, this argument does not support dismissal. The debtor has an interest in continuing the suit because its present liability to the plans may increase or decrease depending on the date fixed for termination. The fiduciaries have an interest in having the Court determine their future actions in view of the competing claims which they cannot accommodate with present funds as well as an interest in the orderly termination of the Plans.

■ Those defendants under the management plan who are vested and receiving payments also argue that § 1132 vests exclusive jurisdiction with the District Court for the relief sought here and that 28 U.S.C. § 1471 is inapplicable because this type of action does not "relate to" a Bankruptcy case. While this type of litigation may, as a result of the Supreme Court's opinion in *Marathon* be prospectively proscribed as of October 4th, it is clearly this type of litigation which is addressed by § 1471 *if* "related to" the Bankruptcy. I find this to be the case here. This determination is based on the following factors: (1) all of the Plans are scheduled creditors of the debtor, Braniff Airways; (2) the effect of any decision regarding the Plans will have a financial impact on Braniff and all of its other creditors; and (3) there is a need for an immediate resolution to these matters in order to facilitate any plan for reorganization. Pursuant to 28 U.S.C. § 1471, the Bankruptcy Court is granted the same jurisdiction as the United States District Court when its exercise of such is "related to" a bankruptcy case. *Marathon, supra.* I construe this to mean that this court has jurisdiction under ERISA in this limited instance just as the United States District Court would in a nonbankruptcy context.

■ The four prerequisites to certification as a class action—numerosity, common questions, typical claims or defenses, and fairly and adequately protect—are listed in Fed.Rule Civ.Pro. 23(a). The IBT and IAM have both opposed certification on the ground that numerosity was lacking. This argument is based on their position which I previously rejected, that this action is in essence one by the debtor to reject the collective bargaining agreements. That is, the matter is a dispute exclusively between the debtors and the union. For the reasons stated earlier I reject that argument here also.

Taking each of the prerequisites individually I find as follows.

(1) NUMEROSITY: The evidence presented at the hearings of August 26 and 27 was undisputed that in each case the class to be certified is composed of more than 1000 members.

(2) COMMON QUESTIONS OF LAW OR FACT: The common questions are: (a) What are the rights of the various Plan participants under each plan to participate in the funds available; (b) What claims do the participants have against the fiduciary or the debtor; (c) The date of termination of each plan is common to that plan's class; and (d) Whether the fiduciary has the right to terminate the plan.

(3) TYPICAL CLAIMS OR DEFENSES: All members of each class or subclass will have exactly the same claims or defenses.

Consequently the claims or defenses of the representative parties will be typical.

(4) FAIRLY AND ADEQUATELY PROTECT: The classes here are defendants and is not necessary that the named defendants voluntarily come forward or make a showing that they have the ability or desire to adequately and fairly protect all class members. Rarely, if ever, do defendants welcome litigation. Each group has competent attorneys either employed or appointed. Funds are available out of which the attorneys who have or will be appointed will be compensated. To the extent that these funds are not used the Debtor has agreed to payment of costs of defense as an administrative expense in its bankruptcy case. This provides a fair and adequate representation of each. Therefore, in the opinion of this Court, the prerequisites which form the first step in this process of class certification have all been satisfied. The second step requires fitting into one of the categories under Fed.Rule Civ.Pro. 23(b).

It is clear that Rule 23(b)(1) is met in that the prosecution of separate actions by or against separate members of the class would pose the risk of inconsistent and varying adjudications which could establish an impossible or incompatible duty on the part of the fiduciary since there are insufficient funds to pay all beneficiaries at the promised levels.

The conditions of Rule 23(b)(2) are also met because the fiduciaries, due to the insufficiency of the plans, have been unable and therefore have refused to act pursuant to the terms of the respective plans which are generally applicable to each class. This situation makes it appropriate to enter some form of final injunctive relief or corresponding declaratory relief with respect to the rights of each class as a whole and the duty of the fiduciary to each class.

Class certification will be ordered for the following defined classes and sub-classes:

Cause No. 482–0336 IAM/Machinists Plan—one class consisting of all plan participants.

Cause No. 482–0337 IBT/Teamsters Plan—one class consisting of all plan participants.

Cause No. 482–0338 Pilots Plan—three subclasses:

1. Vested pilots currently receiving payments.

2. Pilots requesting lump sum payments.

3. All other pilots who are eligible to receive some kind of payment.

Cause No. 482–0339 Management Plan—two subclasses:

1. Vested management personnel currently receiving payments.

2. All other management personnel who are eligible to receive some kind of payment.

Some of the defendants have objected to the expedited manner in which these proceedings have progressed thus far. This is a matter of no small concern to the court. However, it appears that in balancing the equities proceeding in the present manner is in the best interests of all. Fund participants whose monthly payments have been reduced will start receiving their full potential payments as soon as the matter is resolved. The ability to utilize the typical remedy for funding terminated plans by the purchase of commercial annuities is directly related to interest rates. The evidence is that those rates are falling at the present time. Each such reduction in the interest rate means a corresponding increase in the funds necessary to purchase annuities and would consequently have the effect of reducing the payments available to each beneficiary under the Plans. While the plans and the law relating to them are complex, the issues as presently viewed are relatively simple.

To help alleviate any hardships caused by expediting this matter there shall be mailed to each of the respective class members, within 72 hours of the entry of the order for certification, a notice setting forth:

(1) An explanation of what has transpired to date and what is going to occur with respect to the class action as it proceeds.

(2) An explanation of the scheduled trial, its date(s) location and time.

(3) A description of the classes and the names of their counsel of record.

(4) An explanation of the rights of each member of the class.

(5) The effect of a judgment in Plaintiff's favor.