**In re RUSTY JONES, INC., Debtor.**

**INDIANA LUMBERMENS MUTUAL INSURANCE CO., Plaintiff,**

**v.**

**RUSTY JONES, INC., Reorganized Debtor; Glenn R. Heyman, Trustee of Creditors' Grantor Trust; Donald J. Hathaway, as Attorney General for the State of Wisconsin; Robert D. Haase, as Commissioner of Insurance for the State of Wisconsin; and Wisconsin warranty holders, Defendants.**

**Bankruptcy No. 88 B 18708.**

**Adv. No. 90 A 0594.**

United States Bankruptcy Court, N.D. Illinois, E.D.

May 24, 1991.

---

Sara Cook, McKenna, Storer, Rowe, White & Farrug, Chicago, Ill., for Indiana Lumbermens Mut. Ins. Co.

Glenn R. Heyman, trustee, Dannen, Crane, Heyman & Simon, Chicago, Ill.

James Carmel, Carmel, Baker & Marcus, Chicago, Ill., for Warranty Holders.

Norman Newman, Much Shelist Freed Denenberg Ament & Eiger, P.C., Chicago, Ill., for debtor.

William Wolford, Wisconsin Dept. of Justice, Madison, Wis., for Donald J. Hathaway, Atty. Gen. and Robert D. Haase, Com'r.

M. Scott Michel and Karen H. Moore, U.S. Trustees, Office of the U.S. Trustee, Chicago, Ill.

## MEMORANDUM OPINION ON PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

JACK B. SCHMETTERER, Bankruptcy Judge.

Plaintiff Indiana Lumbermens Mutual Insurance Company ("Lumbermens") filed this Adversary Complaint seeking declaratory judgment, interpleader, and injunctive relief with regard to its obligations on auto rust-proofing warranties issued in Wisconsin by the debtor, Rusty Jones, Inc. ("Debtor"). The holders of such warranties are referred to here as the "Wisconsin warranty holders". Plaintiff moved the Court by what is now pending as its Amended Motion to certify the Wisconsin warranty holders as a defendant class pursuant to Fed. R.Civ.P. 23 ("Rule 23") and Bankruptcy Rule 7023 ("Motion"). Defendants Donald J. Hathaway, Attorney General of the State of Wisconsin ("Attorney General"), Robert D. Haase, Commissioner of Insurance of the State of Wisconsin ("Insurance Commissioner"), and Toby E. Sherry, the Commissioner of Banking for the State of Wisconsin ("Banking Commissioner") (collectively, the "Wisconsin Officials") object to the Motion on grounds that the proposed class representatives cannot adequately represent the class as required by Rule 23(a)(4). Those Defendants also contend that defendant classes are impermissible under Rule 23(b)(2). The Official Warranty Creditors Committee was joined as Defendant. It has through representations of counsel opposed the Motion, as has the Franchise Creditors Committee.

Having considered argument of counsel and the pleadings and briefs filed, for reasons stated below Plaintiff's Motion is denied.

### UNDISPUTED FACTS

Prior to commencement of Debtor's related bankruptcy proceeding, it was in a business that included selling rust-proofing warranties for automobiles. On June 16, 1986, Debtor and Lumbermens entered into an automobile rust-proofing warranty bond, in the aggregate penal sum of $500,-000 ("Bond"). The purpose of the Bond was to secure payment of valid claims on rust-proofing warranties issued in the State of Wisconsin by Debtor, as required by Wisconsin law. The Bond, whose obligee was the State of Wisconsin, was delivered to and accepted by the Insurance Commissioner. Debtor allegedly wrote over 38,000 warranties issued in the State of Wisconsin during the bond period for benefit of Wisconsin purchasers of Debtor's rust proofing warranty ("Wisconsin warranty hold-

ers"), most but not all of whom were Wisconsin residents.

At the time the Bond was issued, Debtor executed a general agreement of indemnity on which security was provided in the amount of $500,000. The security was a $500,000 letter of credit posted by Debtor which Lumbermens drew down prior to filing of the bankruptcy petition. The indemnity agreement further provided that Debtor would indemnify Lumbermens for any and all alterations, modifications, renewals, continuations, and extensions of the Bond made during the bond period.

On December 5, 1988, Debtor filed its petition for bankruptcy under Chapter 11 of the Bankruptcy Code, Title 11 U.S.C. ("Code"). On April 11, 1989, this Court entered an order requiring that all warranty claims were to be filed on or before December 1, 1989 or be forever barred. Notice of that bar date was served on creditors.

Upon request of the Insurance Commissioner, on or about July 31, 1989 the Attorney General issued an opinion letter ("Opinion Letter"). The Opinion Letter responded to the Insurance Commissioner's concerns that the potential claims on the warranties issued in Wisconsin during the bond period would exceed the penal amount of the Bond. The Attorney General opined that the Bond could be reformed under Wisconsin law to cover all valid claims by the Wisconsin warranty holders if the aggregate amount of claims exceeded the $500,000 penal sum of the Bond. In support of his opinion, the Attorney General discussed certain Wisconsin statutes and authorities. Lumbermens contests that opinion, and from it flows the instant dispute.

On March 6, 1990, this Court entered an order confirming Debtor's Fifth Amended Plan of Reorganization as modified ("Plan"). The holders of Rusty Jones rustproofing warranties were classified as

Class 5 claims under the Plan, while the Wisconsin warranty holders were separately classified as Class 5B claimants.

On or about October 31, 1989, Lumbermens filed a Motion for allowance of its Administrative Claim. Such administrative claim is for whatever amount Lumbermens would be required to pay in excess of the penal amount of its Bond. The administrative claim is asserted to be a Class 1 claim under the Plan that would entitle Lumbermens to administrative priority for postpetition payments on behalf of Debtor or for payments under the assumed contract of Debtor. That claim has not been resolved.

In this Adversary Proceeding, Lumbermens' Second Amended Adversary Complaint ("Complaint") seeks declaratory relief, interpleader, and injunctive relief. Defendants have filed their Answer thereto.

### THE MOTION FOR CLASS CERTIFICATION

Rule 23(a)(2) requires that the party seeking class certification must show that there is at least one question of fact or law common to the class. Fed.R.Civ.P. 23(a)(2). Pleadings in this Adversary Proceeding raise the following issues, all of which Lumbermens contends are questions of law and fact common to the purported class:

—whether Defendants can reform the Bond to conform to Wis.Rev.Stat. 100.-205(b) so that Lumbermens is obligated to pay in excess of the penal amount of its Bond (the "state law issue")[1];

—whether Section 365(c)(1)(B)(2) of the Bankruptcy Code precludes such enlargement of debtor's liability;

—whether the Bankruptcy Code preempts the Wisconsin statute;

—whether, if Lumbermens must pay in excess of the Bond amount, it is entitled to indemnification from Debtor for such excess amount, and whether such excess

1. In response to Lumbermens' First Amended Adversary Complaint, Defendants filed a Motion for Permissive Abstention on September 21, 1990 ("Motion to Abstain"). In the Motion to Abstain, Defendants contended that the issue of whether the Bond can be reformed under Wis-

consin law in order to compel Lumbermens to pay in excess of the Bond amount (the "state law issue"), was an issue that should be heard by a Wisconsin state court. By Memorandum Opinion entered March 13, 1991, this Court denied the Motion to Abstain.

amount should be allowed as an administrative claim;

—whether Lumbermens can interplead the sum of $500,000, the amount of its Bond, in return for release of all liability under the Bond and injunction against Wisconsin warranty holders from enforcing any statutory right they might have against Lumbermens; and

—whether the Wisconsin warranty holders, as claimants, are entitled to a pro rata share of the Bond proceeds pursuant to the proposed interpleader, or whether they should be paid on a first-come, first-serve basis.

In addition, the Complaint seeks certification of the Wisconsin warranty holders as a class, a request presently the subject of this Motion.

Lumbermens has moved to certify the defendant class with regard to its action for declaratory and injunctive relief under Rule 23(b)(2), and with regard to its action for interpleader under Rule 23(b)(1), or in the alternative, under Rule 23(b)(3). (Bankr.R. 7023). In its pending Motion, Lumbermens proposes that the following persons be certified as a class for purposes of this Adversary Proceeding: all Wisconsin residents who purchased Rusty Jones automobile rustproofing warranties from June 15, 1986 until Rusty Jones ceased to write rustproofing warranties. Lumbermens argues that it has established the elements required by Rule 23 to certify the Wisconsin warranty holders as a class. In its original motion for class certification, Lumbermens proposed a Wisconsin warranty holder, Jon Ferch, as a class representative. Mr. Ferch was then a named defendant herein. Lumbermens has since amended the Motion by substituting the Creditors Committee in place of Jon Ferch as one of its proposed class representatives. Mr. Ferch was then dismissed as a party defendant. Other proposed class representatives are the Attorney General, Insurance Commissioner, and Banking Commissioner. Defendants, however, object to certification on the following grounds: that the proposed class representatives lack legal authority to represent the class and cannot "typically" or "adequately" represent the class; and that the Seventh Circuit has found defendant classes to be impermissible under Rule 23(b)(2).

Not one of the 38,000 putative members of the proposed class has been made a party defendant to the pending Amended Adversary Complaint, nor has it been asserted that any of them are members of the Warranty Creditors Committee.

## DISCUSSION

### Jurisdiction

■ United States District Courts have subject matter jurisdiction over cases arising under, arising in, or related to proceedings under Title 11. 28 U.S.C. § 1334(a), (b). Each District Court is authorized to refer such proceedings to bankruptcy judges for the district. 28 U.S.C. § 157(a). The United States District Court for the Northern District of Illinois has made such referral pursuant to Local Rule 2.33.

In a core proceeding that arises in or under Title 11, a bankruptcy judge has jurisdiction to hear and determine the proceeding and issue final orders and judgments. 28 U.S.C. § 157(b)(1). In the Memorandum Opinion of March 13, 1991 denying the Motion to Abstain, this Court found that it has core jurisdiction over all aspects of this Adversary case. *See* Memorandum Opinion. The Court found Core jurisdiction was found for the following reasons (more fully set forth in that Opinion): the insurance policy secured by Lumbermens is property of the estate under 11 U.S.C. § 541, and therefore core jurisdiction lies over administration of the insurance policy as estate property under 28 U.S.C. § 157(b)(2)(A) and (O); the state law issue necessarily affects other issues in the Complaint which arise under Title 11, specifically the amount and method of distribution to Class 5B and other claimants; the Plan specifically provides that this Court retain core jurisdiction over the matters set forth in the Complaint; and, if the asserted excess coverage exists, that would implicate certain other issues of bankruptcy law.

Lumbermens' insurance of rust warranties is a major asset of this estate, and constitutes one important means whereby an effective administration of Debtor's bankruptcy estate can be accomplished for benefit of the Class 5B claimants. Hence, the Court maintains its core jurisdiction over any issues relating to that insurance. One such issue is the subject of the present Motion, namely whether the Wisconsin warranty holders can and should be certified as a defendant class in the Adversary Proceeding. This Court has core jurisdiction over the entire Adversary Proceeding, including the issue of class certification. 28 U.S.C. § 157(b)(2)(A).

### Certification of Class Under Rule 23

Rule 23 provides that class representatives may sue on behalf of a class if (1) class members are so numerous that joinder of all members is impracticable; (2) questions of law or fact are common to the class; (3) claims or defenses of the representatives are typical of those of class members; and (4) the representatives will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). Additionally, the court must find that (1) the prosecution of separate actions by individual class members would create inconsistent adjudications or impair the ability of other members to protect their interests; or (2) the opposing party has acted or refused to act on grounds generally applicable to the class; or (3) common questions of law or fact predominate and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed.R.Civ.P. 23(b). The party seeking class certification bears the burden of demonstrating that certification is proper. *Trotter v. Klincar*, 748 F.2d 1177, 1184 (7th Cir.1984).

The Seventh Circuit has concluded that if the prerequisites of Rule 23 are met, a court may employ the class device in a bankruptcy proceeding where a class action will further two basic purposes of bankruptcy law: first, to assist the court in determining the rights and entitlements of all concerned parties in a single collective proceeding; and, second, to assist the court in establishing priorities and apportioning assets among creditors according to those priorities. *In re American Reserve Corp.*, 840 F.2d 487, 489–92 (7th Cir.1988). While *American Reserve* pertained to a class claim, its reasoning applies to any action in bankruptcy on behalf of a claimant class.

As discussed below, the motion to certify class is denied because a proper class action is not presented under Rule 23. Therefore, there is no need to reach the additional considerations required under *American Reserve*.

### Standing of Proposed Class Representatives

Lumbermens contends that any or all of the following parties meet the requirements for class representatives under Rule 23: the Attorney General, the Banking Commissioner, the Insurance Commissioner (collectively, the "Wisconsin Officials"), and the Warranty Creditors Committee. Before examining whether the elements of Rule 23 have been met, however, the Court must first determine whether any of those proposed representatives have standing to represent the class.

■ Generally, the proposed plaintiff or defendant-representative must be a member of the class which he claims to represent, or, must have standing to represent the class. 3B Moore's Federal Practice ¶ 23.04[2]; *Ex. rel. Bowman v. Home Fed. Sav. & Loan*, 521 F.2d 704, 707 (7th Cir. 1975) (in which the court noted that Rule 23(a) itself provides that "one or more *members* of a class may sue or be sued as representative parties" on behalf of the class).[2] In *Bowman*, the Illinois State's Attorney purported to sue, as a representative of Illinois citizens seeking home mortgage loans, two savings and loan associations. *Bowman*, 521 F.2d at 707. The

---

**2.** *Cf. Thillens, Inc. v. Community Currency Exch. Ass'n.*, 97 F.R.D. 668, 679 (N.D.Ill.1983) ("[a]lthough the representative need not be a representative of the class ... there is the further requirement that the [defendant] class representative must have injured the plaintiff in the same way as other defendants have injured him").

*Bowman* court, however, observed that the State's Attorney had not alleged that either he or the state of Illinois was seeking such a loan. *Id.* The court found that a state, like any other representative, may maintain a class action on behalf of its citizens only if it satisfies the requirements of Rule 23. *Id.* The court concluded that because the State's Attorney was not a member of the class which he purported to represent, he lacked standing and could not pursue his complaint on behalf of the citizens of Illinois. *Id.*

■ Because the Wisconsin Officials are not Wisconsin warranty holders and hence are not members of the purported class, there is a serious question as to whether they lack standing to represent the asserted class. The key issue here is whether there are circumstances under which the state or its officials can sue on behalf of its private citizens even though the state and those officials are not members of the putative class.

As noted by one commentator, the standing of a state to represent its citizens raises difficult issues related to class standing. 3B Moore's Federal Practice ¶ 23.04[3]. In *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184 (1975), the Supreme Court held that a state cannot sue solely under the doctrine of parens patriae in order to recover antitrust treble damages for injury to the economy of the state. *Hawaii*, 405 U.S. 251, 92 S.Ct. 885. In other words, a state has no standing to bring a class action in the guise of parens patriae for possible damage claims of its citizens when the state has sustained no injury on its own and its citizens could sue on their own behalf. *See* 7A Wright & Miller, Federal Practice and Procedure § 1761, p. 144 (2d ed.) (explaining the holding in *Hawaii*). In *Hawaii*, the Supreme Court did note that the lower court had dismissed a separate class action count simply because it was unwieldy, and "did not hold that a State could never bring a class action on behalf of some or all of its consumer citizens." *Id.* at 266, 92 S.Ct. at 893. Thus, the *Hawaii* court left open the possibility that a state can bring a class action

on behalf of its consumer citizens, not under the general doctrine of parens patriae, but if the requirements of Rule 23 are met. *See Id.*

Indeed, courts have found that the state can represent a class of consumers. In *State of Illinois v. Bristol–Meyers Co.*, 470 F. 2d 1276 (D.C.Cir.1972), the District of Columbia Circuit held that the Illinois Attorney General had standing to sue on behalf of a class of private purchasers and consumers of drug products in a federal antitrust action. The court reasoned that the Attorney General had standing to do so since he was already properly in federal court suing on behalf of governmental entities under the Illinois Antitrust Act. The Illinois Antitrust Act explicitly authorized the Attorney General to "bring an action on behalf of this State, counties ... and other political subdivisions organized under the authority of this State...." Defendants in *Bristol–Meyers* argued that in the absence of a legislative grant to proceed in any other representative capacity, the Attorney General was limited by the Illinois Antitrust Act from representing the interests of private consumers. The court responded by ruling:

> Once properly in federal court on its own behalf and that of its political subdivisions, the State, like any other party, may seek to proceed under Rule 23 as a class representative of drug purchasers similarly situated, including private purchasers.... The certification of the State in the latter capacity depends upon whether it satisfies the requirements of the federal rule, irrespective of state law considerations. *Bristol–Meyers*, 470 F.2d at 1277–78.

The *Bristol–Meyers* court also added that even if limitations under Illinois law were considered, the Illinois Constitution provides that the Attorney General has common law powers and duties wholly apart from those granted by statute. *Id.* at 1278. Thus, even if the Illinois Antitrust Act did not explicitly authorize the State to represent private purchasers, but rather limited state representation to political entities, the Illinois Attorney General would

still have standing to represent private consumers as parens patriae under the Constitution of this State.

However, well-reasoned authority in this District has rejected the reasoning of the D.C. Circuit in *Bristol–Meyers*. In *Bd. of Educ. v. Climatemp, Inc.*, 91 F.R.D. 245 (N.D.Ill.1981), the District Court found that state law limitations "should be a consideration in questions dealing with class action representation." *Climatemp*, 91 F.R.D. at 249, citing *State Teachers Retirement Bd. v. Fluor Corp.*, 73 F.R.D. 569, 571 n. 2 (S.D.N.Y.1976). Having reached that conclusion, the *Climatemp* court found that the next question was "whether the law of plaintiff's state [Illinois] preclude[d] school boards from acting as representatives of private purchasers in an antitrust action." *Id.* at 250.

In *Climatemp*, five school districts brought antitrust actions against sheet metal construction companies and sought certification of a class consisting of both private and public purchasers of sheet metal construction. The court found that Illinois school boards had the capacity to bring an antitrust action on their own behalf since Illinois law provided that they could sue or be sued where judicial proceedings are had pursuant to Ill.Rev.Stat. ch. 122, ¶ 10–2. However, although the school boards could sue for damages which their districts had incurred as a result of antitrust violations, contrary to reasoning in *Bristol–Meyers* it did not follow that those boards could also sue for damages on behalf of private citizens for the same violations. *Id.* at 250. Because school boards were not authorized under Illinois law to represent private purchasers in an antitrust action, they could not adequately represent the plaintiff class proposed by them. *Climatemp, Id.*

*Climatemp* did not address, as did the court in *Bristol–Meyers*, the question whether the state could act on behalf of its private citizens as parens patriae under the Illinois Constitution regardless of limits in the state statutes. However, in *In re Genl. Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106 (7th Cir.) *cert.*

*denied*, 444 U.S. 870, 100 S.Ct. 146, 62 L.Ed.2d 95 (1979), the Seventh Circuit found that "[i]n the absence of statutory authorization, [the State of Illinois] cannot maintain this [class] action in federal court as a parens patriae action." *Genl. Motors*, 594 F.2d at 1127. Thus, under *General Motors* and *Climatemp*, if the State has not suffered the same injury as members of the putative class, it may not act on behalf of its citizens unless it is authorized to do so under state statutory law, regardless of whether the state constitution recognizes the role of the State as parens patriae.

From review of Wisconsin authorities, it is clear that none of the Wisconsin Officials are authorized under Wisconsin statutory law to represent private citizens in an action for damages under the Wisconsin auto rustproofing statute. Unlike states such as Illinois, Wisconsin has specifically circumscribed the powers and duties of the office of the Attorney General. The Wisconsin Supreme Court has interpreted language in the Wisconsin state constitution as removing from the office of the Attorney General any powers and duties which were found in that office under common law. *See In re Estate of Sharp*, 63 Wis.2d 254, 217 N.W.2d 258, 262 (1974). The court in *Sharp* found that the Attorney General

is devoid of the inherent power to initiate and prosecute litigation intended to protect or promote the interests of the state or its citizens and cannot act for the state as parens patriae. *Sharp*, 217 N.W.2d at 262.

Furthermore, the *Sharp* opinion instructed that

[s]uch [parens patriae] power must be specifically granted by the legislature. Unless the power to prosecute a specific action is granted by law, the office of the Attorney General is powerless to act. *Id.*

Thus, as in *Climatemp* and *General Motors*, the Wisconsin Supreme Court has found that unless a statute specifically authorizes a public official to prosecute an action on behalf of its private citizens, that public official has no standing to do so.

Furthermore, even if this Court followed *Bristol–Meyers* which recognized the standing of the Illinois Attorney General under the common law doctrine of parens patriae, it is clear that the Wisconsin constitution, unlike the Illinois constitution, does not recognize any parens patriae powers on the part of its public officials. *See Sharp*, 217 N.W.2d at 262. Thus, because there is no Wisconsin statute specifically authorizing them to do so, the Wisconsin Officials lack standing to prosecute a civil class action on behalf of its citizens who suffered damages from breach of the Wisconsin auto rust warranties. Lacking standing to prosecute on behalf of the putative class, the Wisconsin officials likewise lack standing to defend the class action on behalf of such a class.

Lumbermens argues that because there is statutory authority for the Wisconsin Officials to sue on behalf of its citizens, it follows that the Wisconsin Officials also have an implied authority to defend on behalf of the same individuals. Lumbermens cites several statutes under which it contends that Wisconsin Officials have power to bring an action as class representatives. Lumbermens first cites to Wis. Stat. § 29.576(5) (1971), which authorizes the Attorney General to bring an action in the name of the state to enforce compliance of beaver farmers with regard to a bond obtained for licensing. This statute has been repealed. Even if it were still in effect, the statute would be irrelevant here. That law deals with beaver farming, not rust proofing warranties. Moreover, it allows the Attorney General to bring an enforcement action in the name of "the people of the state of Wisconsin," not on behalf of individual private citizens.

The second statute relied on by Lumbermens is Wis.Ann.Stat. § 165.25(2), which authorizes the "department of justice" to

[p]rosecute at the request of the governor, or the head of any department of the state government any official bond or any contract in which the state is interested ... [and] upon a breach thereof [may] prosecute or defend for the state all actions, civil or criminal, relating to any matter connected with any of their

departments. Wis.Ann.Stat. § 165.25(2) (1988).

Again, this statute is not relevant to the present action. First, the Bond at issue here is not an "official bond" as required by the statute. An "official bond" is defined as that which is furnished to the state by a public officer, "conditioned for the faithful discharge of the duties of his office...." Wis.Ann.Stat. § 19.11. It might be argued that the Bond in this case may be "a contract in which the state is interested." However, Section 165.25 specifically provides that the attorney general "may prosecute or defend [with regard to such a contract] *for the state....*" (emphasis supplied). There is nothing in the statute which authorizes the Attorney General to sue on behalf of individuals. In addition, at the present time, neither the governor nor any state department head has requested the Attorney General to invite action in this case under the law as required under Section 165.25(2).

Finally, Lumbermens contends that the Attorney General is authorized to litigate against Lumbermens with regard to all issues raised in the Adversary Proceeding under Wis.Ann.Stat. § 100.205(7) (1988). However, Lumbermens has misconstrued the nature of the Attorney General's authority under this section.

Section 100.205 provides protection with regard to the issuance of warranties in general. In particular, Section 100.205(7) provides that the Wisconsin department of justice "may commence an action in circuit court in the name of the state to restrain by temporary or permanent injunction any violation of this section." Wis.Ann.Stat. § 100.205(7). This section merely authorizes the Attorney General to bring an action "in the name of the state." It does not give the Attorney General authority to sue on behalf of individuals injured by violations of the statute. Moreover, Section 100.205(9) specifically provides that *"any person injured* by a violation of this section may bring a civil action for damages under S. 100.205(5)" (emphasis added). Section 100.205 thereby distinguishes between an action by the state for injunctive

Furthermore, even if this Court followed *Bristol–Meyers* which recognized the standing of the Illinois Attorney General under the common law doctrine of parens patriae, it is clear that the Wisconsin constitution, unlike the Illinois constitution, does not recognize any parens patriae powers on the part of its public officials. *See Sharp*, 217 N.W.2d at 262. Thus, because there is no Wisconsin statute specifically authorizing them to do so, the Wisconsin Officials lack standing to prosecute a civil class action on behalf of its citizens who suffered damages from breach of the Wisconsin auto rust warranties. Lacking standing to prosecute on behalf of the putative class, the Wisconsin officials likewise lack standing to defend the class action on behalf of such a class.

Lumbermens argues that because there is statutory authority for the Wisconsin Officials to sue on behalf of its citizens, it follows that the Wisconsin Officials also have an implied authority to defend on behalf of the same individuals. Lumbermens cites several statutes under which it contends that Wisconsin Officials have power to bring an action as class representatives. Lumbermens first cites to Wis. Stat. § 29.576(5) (1971), which authorizes the Attorney General to bring an action in the name of the state to enforce compliance of beaver farmers with regard to a bond obtained for licensing. This statute has been repealed. Even if it were still in effect, the statute would be irrelevant here. That law deals with beaver farming, not rust proofing warranties. Moreover, it allows the Attorney General to bring an enforcement action in the name of "the people of the state of Wisconsin," not on behalf of individual private citizens.

The second statute relied on by Lumbermens is Wis.Ann.Stat. § 165.25(2), which authorizes the "department of justice" to

[p]rosecute at the request of the governor, or the head of any department of the state government any official bond or any contract in which the state is interested ... [and] upon a breach thereof [may] prosecute or defend for the state all actions, civil or criminal, relating to any matter connected with any of their

departments. Wis.Ann.Stat. § 165.25(2) (1988).

Again, this statute is not relevant to the present action. First, the Bond at issue here is not an "official bond" as required by the statute. An "official bond" is defined as that which is furnished to the state by a public officer, "conditioned for the faithful discharge of the duties of his office...." Wis.Ann.Stat. § 19.11. It might be argued that the Bond in this case may be "a contract in which the state is interested." However, Section 165.25 specifically provides that the attorney general "may prosecute or defend [with regard to such a contract] *for the state*...." (emphasis supplied). There is nothing in the statute which authorizes the Attorney General to sue on behalf of individuals. In addition, at the present time, neither the governor nor any state department head has requested the Attorney General to invite action in this case under the law as required under Section 165.25(2).

Finally, Lumbermens contends that the Attorney General is authorized to litigate against Lumbermens with regard to all issues raised in the Adversary Proceeding under Wis.Ann.Stat. § 100.205(7) (1988). However, Lumbermens has misconstrued the nature of the Attorney General's authority under this section.

Section 100.205 provides protection with regard to the issuance of warranties in general. In particular, Section 100.205(7) provides that the Wisconsin department of justice "may commence an action in circuit court in the name of the state to restrain by temporary or permanent injunction any violation of this section." Wis.Ann.Stat. § 100.205(7). This section merely authorizes the Attorney General to bring an action "in the name of the state." It does not give the Attorney General authority to sue on behalf of individuals injured by violations of the statute. Moreover, Section 100.205(9) specifically provides that *"any person injured* by a violation of this section may bring a civil action for damages under S. 100.205(5)" (emphasis added). Section 100.205 thereby distinguishes between an action by the state for injunctive

relief and an action by private citizens for damages.

Thus, Section 100.205 only authorizes the Attorney General to bring enforcement actions on behalf of the State, actions to enjoin violations under Wisconsin law. Such enforcement power does not confer standing to represent private individuals in a class action for damages.

Courts have readily distinguished between enforcement actions and private class actions by state officials. In *State v. Excel Mgmt. Serv.*, 111 Wis.2d 479, 486–87, 331 N.W.2d 312 (1983), the court found that certain sections of the state consumer protection statute authorized the state to commence an action to enjoin violations of that statute. Once an action to enjoin is commenced by the Attorney General, the trial court in its discretion may order restitution for pecuniary losses suffered as a result of the practices forming the basis of the action. *Excel*, 111 Wis.2d at 486, 331 N.W.2d 312. However, Section 100.205 [3] authorized individuals, not the attorney general, to bring an action for damages. *Excel*, 111 Wis.2d at 486–87, 331 N.W.2d 312. Thus, *Excel* concluded that the consumer protection statute did not authorize the Attorney General to represent private citizens in an action for damages.

Similarly, in *People v. Pacific Land Research Co.*, 20 Cal.3d 10, 141 Cal.Rptr. 20, 569 P.2d 125 (1977), the court found that a consumer protection action brought by the People of the State of California, seeking injunctive relief, civil penalties, and restitution, was not the equivalent of a class action brought by private parties. "An action filed by the People seeking injunctive relief and civil penalties is fundamentally a law enforcement action designed to protect the public and not to benefit private parties." *Pacific*, 141 Cal.Rptr. at 24, 569 P.2d at 129. Furthermore, "while restitution would benefit [private injured citizens] ... such repayment is not the primary object of the [enforcement] suit, as it is in most private class actions." *Id.* The *Pa-*

*cific* court concluded by observing that an action by "the People" lacks the fundamental attributes of a consumer class action filed by a private party in that the attorney general or other government official who files the action "is ordinarily not a member of the class...." *Id.* The Seventh Circuit has agreed with the reasoning in *Pacific* by similarly recognizing that the class action, "although it also provides a vehicle for furthering the substantive policies behind legislation, is primarily a device to vindicate the rights of individual class members." *In re Genl. Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1129 (7th Cir.), *cert. denied*, 444 U.S. 870, 100 S.Ct. 146, 62 L.Ed.2d 95 (1979).

Thus, because the Wisconsin statutes merely provide authority to conduct an enforcement action, the Attorney General lacks standing to represent the proposed class of warranty holders in the Adversary Proceeding.

It must also be noted that the Attorney General is not seeking to increase the obligations of Lumbermens in excess of the Bond amount under Section 100.205. He opined in his letter opinion that such could be done under Section 601.64(1) for alleged violations of Sections 631.01(4m) and 632.18. Section 632.18, entitled "rustproofing warranties insurance," provides that "[a] policy of insurance to cover a warranty, as defined in s. 100.205(1)(g), shall fully cover the financial integrity of the warranty." Wis.Ann.Stat. § 632.18. Section 601.64 is entitled "enforcement procedure" and provides that "the commissioner [of insurance] may commence an action in circuit court in the name of the state to restrain by temporary or permanent injunction ... any violation of chs. 600 to 655...." Wis.Ann.Stat. § 601.64(1). Again, this statute authorizes the Insurance Commissioner (not the Attorney General) to bring an enforcement action "in the name of the state," but clearly does not grant the Commissioner, or any other public official, the power to represent private individuals in an action for dam-

---

3. Section 100.205 provides:
"Any person suffering pecuniary loss because of a violation ... under this section may sue for damages therefor in any court of competent jurisdiction...."

ages. Moreover, the Wisconsin officials have not yet even filed any litigation or counterclaim to assert the state's position, and have sought no affirmative relief before this Court.

Lumbermens also cites to Section 601.71 which authorizes the Insurance Commissioner, with the agreement of the Attorney General, "to bring an action in the name of the state on behalf of all policyholders so situated for the purpose of enforcing their rights" when "any nondomestic insurer which no longer has a certificate of authority in this state does or omits to do any act whereby the rights of policy holders ... are adversely affected." Wis.Ann.Stat. § 601.71 (1988). This statute on its face is inapplicable to this proceeding, and hardly grants standing to the Insurance Commissioner in this case. First, the statute merely authorizes the Insurance Commissioner to bring an enforcement action "in the name of the state." Second, even if the Commissioner could bring an action on behalf of private citizens, the statute only authorizes a suit against a nondomestic insurer which is no longer certified by the state of Wisconsin. There is no contention here that Lumbermens is no longer certified by the state of Wisconsin.

Lumbermens also invokes Section 100.-205(9)(b) in its argument that the Insurance Commissioner has legal authority to represent the proposed defendant class. However, Section 100.205(9)(b) states that "*any person injured* by a breach of a contract for rustproofing may bring an action against the warrantor or its insurer or both to recover damages, costs and disbursements...." Wis.Ann.Stat. § 100.205(9)(b) (emphasis added). This section is yet another statute which does not authorize public officials to bring an action for damages, but rather authorizes only private persons to do so.

Lumbermens also contends that the Banking Commissioner has statutory authority to represent the proposed class, and in support of its contention cites Wis.Ann. Stat. § 424.501(1). This section provides that the Banking Commissioner may bring an action against a party who is a "credi-

tor," who solicits or offers for sale "any insurance product in connection with a consumer credit transaction in any manner that is false, misleading or deceptive...." Wis.Ann.Stat. § 424.501(1).

However, the language of Section 424.-501 is inapplicable to the parties here. Lumbermens does not fall within the meaning of "creditor" as the term is defined in Section 421.301(16). A "creditor" is "a merchant who regularly engages in consumer credit transactions or in arranging for the extension of consumer credit by or procuring consumer credit from third persons." Wis.Ann.Stat. § 421.301(16). Lumbermens is not a "merchant" of rustproofing warranties, since a "merchant" is "a person who deals in goods of the kind or otherwise holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction." Wis. Ann.Stat. § 402.104(3). Lumbermens is merely the insurer, not the seller, of the rustproofing warranties.

In addition, Section 424.501(1) is inapplicable here because it has not been alleged that all the Wisconsin warranty holders engaged in consumer credit transactions. Certainly it cannot be assumed that none of the sales of warranties involved cash transactions. Furthermore, it has not been alleged that Lumbermens or Debtor engaged in activities that were either "false" or "misleading." *See* Wis.Ann.Stat. § 424.-501(1).

Wisconsin law does not give any of the Wisconsin officials sued here standing to bring an action for damages on behalf of the proposed class, as required under Wisconsin law. *See Sharp*, 217 N.W.2d at 262. Thus, each of the defendant Wisconsin Officials lacks the legal authority to sue on behalf of, let alone defend, private citizens. Because the Wisconsin Officials are not members of the purported class, in the absence of such requisite statutory grant this Court must find that neither the Attorney General, nor the Insurance Commissioner, nor the Banking Commissioner, has standing to represent the Wisconsin warranty holders as a class in this Adversary Proceeding.

■ In addition to the Wisconsin Officials, Lumbermens has proposed the Creditors Committee as a class representative. However, the Creditors Committee lacks standing to represent the class since the members of the Creditors Committee are not alleged to be members of the class. *See Bowman,* 521 F.2d at 707; 3B Moore's Fed.Prac. ¶ 23.04[2]. Lumbermens has not alleged, much less shown, that any member of the Creditors Committee is a Wisconsin warranty holder of a claim under the Bond.

### Elements of Rule 23(a)

Even if each or any of the proposed class representatives were found to have standing to represent the putative class, the Court would still deny the Motion on grounds that certain requirements under Rule 23(a) have not been met.

1. *Defendant class must be so large that joinder of all defendants would be impracticable and common questions of law and fact exist between members of the class*

■ The parties do not dispute that Lumbermens has met its burden with regard to the first two elements of Rule 23(a), namely that (1) the class is so numerous that joinder of all members is impracticable; and (2) there are questions of law or fact common to the class. Fed.R.Civ.P. 23(a)(1), (2).

It is within the discretion of the court to find that where the class is large, the numbers alone are dispositive of the impracticability of joinder. *In re Tom Livaditis,* 122 B.R. 330, 336 (Bankr.N.D.Ill.1990) (Schmetterer, J.), citing *Thillens, Inc. v. Community Currency Exchange Assoc.,* 97 F.R.D. 668, 677 (N.D.Ill.1983). In *Livaditis,* this Court found that because the members of the class were at least 1,000 in number, the numerosity requirement was met. In *Thillens,* the court found that a class of approximately 1,692 members established the impracticability of joinder by its numbers alone. It follows that the proposed class here of over 38,000 members more than meets the numerosity requirement of Rule 23(a)(1).

The party seeking class certification must show that there is at least one question of fact or law common to the class. Fed.R.Civ.P. 23(a)(2). The issue of whether the Bond can be modified to provide coverage over $500,000 is one question of law which is common to all Wisconsin warranty holders. That state law question also affects other issues raised in the Complaint which concern each member of the proposed class. The issues of preemption, interpleader, and method of distribution to Class 5B claimants in the event the Bond is modified, are also questions common to the proposed class. Certain questions of fact are not common to all members of the proposed class. For example, some Wisconsin warranty holders filed timely proofs of claim before the bar date, while others have not. Some Wisconsin warranty holders have experienced actual rust damage, while others have not. However, these factual distinctions do not prevent the proposed class from satisfying the commonality requirement under Rule 23(a)(2) in light of the presence of several common questions of law. *Allen v. Isaac,* 99 F.R.D. 45, 54 (N.D.Ill.1983) (in which the court found commonality since each class member was challenging the discriminatory impact of a certain examination, despite the factual difference that some employees were rated deferred while others were rated reevaluated). Indeed, given the overriding significance of the state law issue upon the rest of the issues raised in this Adversary Proceeding, the fact that this issue is common to all members of the proposed class is by itself sufficient to meet the commonality requirement under Rule 23(a)(2).

2. *Typicality*

■ Rule 23(a)(3) also requires that "claims or defenses of the representatives [be] typical of those of class members." Fed.R.Civ.P. 23(a)(3). A consideration of the typicality requirement involves much overlap with a consideration of commonality. *Garcia v. Rush–Presbyterian–St. Luke's Med. Ctr.,* 80 F.R.D. 254, 269 (N.D.Ill.1978). As with the commonality requirement, factual differences in detail between plaintiff's claims and those of the class will not preclude a finding of typicali-

ty "where the claims arise out of the same legal or remedial theory." *Garcia*, 80 F.R.D. at 270. As discussed, the commonality requirement is satisfied in that the question of whether Lumbermens is obligated to pay in excess of the Bond amount is common to all members of the proposed class. That question of law would also be at issue in an enforcement action for injunctive relief brought by the Wisconsin Officials, who have been proposed as class representatives. Thus, the claims of the Wisconsin Officials and the claims of the class would "arise out of the same legal theory." *See Id.*

Indeed, typicality is achieved when the defenses of the class representatives are the same as the defenses of class members. *In re Broadhollow Funding Corp.*, 66 B.R. 1005, 1009 (Bankr.E.D.N.Y.1986), citing 3B Moore's Federal Practice ¶ 23.06–2 (1985). This occurs where the same event, practice, or course of conduct has given rise to the defense of the class members and their named representatives. *Id.*, citing *Edmondson v. Simon*, 86 F.R.D. 375, 380 (N.D.Ill.1980). Lumbermens' failure to pay in excess of the Bond amount in violation of a Wisconsin statute, if that be found, would give rise both to an action for declaratory relief by the Wisconsin Officials and an action for damages by the Wisconsin warranty holders. Both the Wisconsin Officials' action and that of the class members would arise from the same event, Lumbermens' alleged violation of Wis.Ann.Stat. § 632.18.[4]

As discussed previously with regard to standing, if the Wisconsin Officials and class members were plaintiffs in this proceeding, they would be seeking different remedies. Wisconsin law authorizes the Wisconsin Officials to pursue an enforcement action for injunctive or declaratory relief under Wis.Ann.Stat. § 100.205(7), but allows only private citizens to sue for damages under Wis.Ann.Stat. § 100.205(9)(a). Because claims of the Wisconsin Officials and those of class members do not arise

from the same remedial theory, the typicality requirement is in question.

However, the District Court in *Garcia* stated that the typicality requirement is met if the claims of the representative and those of the class arise out of the "same legal *or* remedial theory." *Garcia*, 80 F.R.D. at 270 (emphasis added). Under that view, so long as the respective claims share the same legal theory, typicality will not be defeated even if different remedies are sought. Furthermore, in *Broadhollow*, the court found that although certain members of the defendant class who were proposed class representatives were "in conflict over the remedy sought, class certification need not be denied." *Broadhollow*, 66 B.R. at 1010 (in which certain members of the defendant class sought turnover of certain mortgages, while others sought declaratory judgment adjudicating who was the equitable owner of the mortgages). Following the reasoning of those cases, because the claims and defenses of the proposed class representatives here are the same as those of putative class members, the typicality requirement of Rule 23(a)(3) has been met.

### 3. *Adequate Representation*

■ Pursuant to Rule 23(a)(4), in order to determine whether named defendants adequately represent interests of a class, two factors must be examined: (1) whether the named representatives have any interests which are antagonistic to the interests of the class; and, (2) whether counsel for named defendant is competent. *Allen v. Isaac*, 99 F.R.D. 45, 55 (N.D.Ill.1983). This requirement is most serious. Adequate representation is "the foundation of all representative actions," its role being to ensure that each class member has his or her "day in court" as mandated by due process. *In re Genl. Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1121 (7th Cir.) *cert. denied*, 444 U.S. 870, 100 S.Ct. 146, 62 L.Ed.2d 95 (1979), citing *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940). Furthermore, in light of the res judicata consequences of class

---

**4.** Section 632.18 provides that a policy of insurance to cover a warranty "shall fully cover the

financial integrity of the warranty." Wis.Ann. Stat. § 632.18.

actions with regard to absent class members, there is an additional duty on the court to consider carefully the requirement of fair and adequate representation. *Garcia,* 80 F.R.D. at 271. Here, all Defendants assert that they cannot adequately represent the class because their interests may be antagonistic to the putative class.

It is not necessary for named defendants to "voluntarily come forward or make a showing that they have the ability or desire to adequately and fairly protect all class members." *In re Braniff Airways, Inc.,* 22 B.R. 1005, 1009 (Bankr.N.D.Tex.1982). "Rarely, if ever, do defendants welcome litigation." *Id.* Indeed, "a defendant class representative [who] vigorously opposes his representative status may prove his ability to be an adequate class representative since he may reveal the capability to present an effective adversary position." *Broadhollow,* 66 B.R. at 1011. Here, the Defendants have demonstrated their technical ability through representation by skillful counsel to represent the defendant class in an effective and competent manner.

■ However, because the Wisconsin Officials and the Creditors Committee lack standing to represent the defendant class, it follows that the Wisconsin Officials and the Creditors Committee cannot adequately and fairly represent the class. In particular, the interests of the Wisconsin Officials in an enforcement action may be antagonistic to the interests of the Wisconsin warranty holders as private citizens in an action for damages. As the court in *Pacific* observed, "the [Attorney General's] role as a protector of the public may be inconsistent with the welfare of the class so that he could not adequately protect their interests...." *Pacific,* 569 P.2d at 129. An action by the State seeking declaratory relief is fundamentally a law enforcement action designed to protect the public as a whole rather than to benefit individual private parties. *Id.*

The Wisconsin Officials also assert that they would take certain positions with regard to the Bond issue which would be antagonistic to a number of Wisconsin class members. The Attorney General asserts that he would take the following positions in this proceeding: that the bar date in the bankruptcy case does not act as a bar to claims filed after that date by Wisconsin warranty holders against Lumbermens; that Lumbermens should pay claims on a first come, first serve basis rather than on a pro rata basis; and, that only those vehicles which have actual rust damage are entitled to recover from Lumbermens. However, although the Attorney General may in fact have conflicts with certain class members, such conflicts concern claims issues which are not before the Court in this Adversary case. This case is primarily concerned with the issue of Lumbermens' obligations under the Bond. Therefore, conflicts identified by the Attorney General would not cause his representation and that of the other officials to be inadequate. However, the duty of the state officials to protect state law interests generally instead of that of the class members raises serious questions as to whether they could adequately represent the class.

■ With regard to whether the Creditors Committee is an adequate representative, Lumbermens has stated no more than that the members of the Creditors Committee are purchasers of Rusty Jones warranties. It is not contended that the Committee members include Wisconsin warranty holders who have claims under the Bond. Indeed, from colloquy before the Court, it appears doubtful that any of the handful of people who have agreed to serve on that Committee are Wisconsin warranty holders.

Indeed, interests of Wisconsin warranty holders are potentially adverse to those of the non-Wisconsin warranty claim holders nationwide, a group numbering over 210,000 people, though it did not appear to be so when this Committee was approved. The Committee could not adequately represent the Wisconsin class, because it now appears to represent possibly antagonistic interests among competing claimholders. It is in the interest of the Wisconsin warranty holders that the Bond be increased. However, it is in the interest of the non-

Wisconsin creditors that the Bond not be increased lest the estate face a threat that Lumbermen's resulting administrative claim blot up all funds now available to non-Wisconsin claimants. Also, many Wisconsin warranty holders filed claims here by the claim bar date set by this Court. Only they can share in assets of this estate. Many other Wisconsin claimants did not file timely claims here, yet they may assert a claim against the Bond, thus coming into conflict with the Committee's obligation to protect interests of those who filed timely claims here.

Accordingly, even if it were shown that some of the members of the Creditors Committee were Wisconsin warranty holders, it would not be possible to find that the Committee could adequately represent the class. In *In re Continental Airlines, Inc.,* 57 B.R. 839, 841 (Bankr.S.D.Tex.1985), the court found that to allow a creditors committee to serve as a class representative would "violate existing clear case law prohibitions of the functions and duties of such Committees." *Continental,* 57 B.R. at 841. (*Contra, see Broadhollow,* 66 B.R. 1005 which found that a creditors committee may represent a class when the committee members are also members of the class).

*Continental* reasoned that

[C]ounsel to the Committee cannot be placed in the untenable position of maximizing the distribution to individual creditors. [citations omitted]. To allow

the Committee [to represent a class of claimants] has the potential to violate this prohibition, by placing the Committee squarely in the untenable position of a clear conflict of interest between one individual creditor ... and another, maximizing some claims, some at the potential expense of others. This is a conflict to clearly be avoided as a matter of law. *Id.*

In this case, if Lumbermens loses on the Bond issue, but is entitled to indemnification of the excess amount from Debtor in the form of an administrative claim, Debtor will have less money to distribute to the non-Wisconsin warranty holders represented by the Creditors Committee. The Creditors Committee clearly has interests in favor of those persons which could prove antagonistic to the interests of the Wisconsin class. Thus, even if it had standing to do so, the Creditors Committee could not adequately and fairly represent the proposed defendant class pursuant to Rule 23(a)(4).

## CONCLUSION

Because Defendants lack standing to represent the class and also because the prerequisites of Rule 23(a) have not fully been met, the Motion for class certification must be denied. In view of that ruling, there is no need to determine whether the proposed Defendant class action satisfies at least one of the requirements of Rule 23(b).[5] Nor can the court reach the ques-

**5.** With regard to Rule 23(b)(2), it must be noted that in *Henson v. East Lincoln Twp.,* 814 F.2d 410 (7th Cir.1987), *cert. granted,* 484 U.S. 923, 108 S.Ct. 283, 98 L.Ed.2d 244, *mot. defer further proceedings granted,* 484 U.S. 1057, 108 S.Ct. 1009, 98 L.Ed.2d 975 (1988) the Seventh Circuit found that defendant class actions are impermissible under Rule 23(b)(2). *See also* Wright & Miller, 7A Federal Practice and Procedure § 1775 at 461–62 (2d ed. 1986) ("... the fact remains that the language [for Rule 23(b)(2)] is clear, and the better view is to restrict its applicability to plaintiff classes seeking injunction relief"). However, the *Henson* court observed in dicta:

... in a declaratory judgment action the parties frequently get reversed. A debtor for example might bring a suit against a class of creditors, seeking a declaration of nonliability. In such a case it could be argued that the

"real" plaintiffs were the creditors and the "real" defendant the debtor—that it was the debtor who had acted or refused to act on grounds generally applicable to the class. In such a case a (b)(2) "defendant" class might conceivably be permissible, though that is not an issue we need resolve today. *Henson,* 814 F.2d at 414.

Likewise, this Court does not reach the issue of whether a defendant class is permissible under Rule 23(b)(2) where the parties are a debtor and its creditors, or in this proceeding where the parties are debtor's insurer with a possible right of subrogation against debtor, and debtor's creditors. *See A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 999 (4th Cir.) *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986) (in which the court recognized that there are cases under Section 362(a)(1) where a bankruptcy court may properly stay the proceedings against

tion of whether a class could have been certified if Lumbermens had joined some individual Wisconsin warranty holders as defendants and class representatives.

Accordingly, by separate order Lumbermens' Motion to certify the Wisconsin warranty holders as a class, is denied.

non-bankrupt co-defendants where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor").