In re DEHON, INC., et al.,* Debtors.

**Stephen S. Gray, as Plan Administrator of Dehon, Inc. et al. (F/K/A Arthur D. Little, Inc.), Plaintiff,**

v.

**Peter D. Shapiro, and a Class of Persons and Entities Similarly Situated, Defendants.**

**Bankruptcy No. 02–41045–HJB.**
**Adversary No. 03–4028.**

United States Bankruptcy Court, D. Massachusetts.

Sept. 10, 2003.

---

* The Debtor, formerly named ARTHUR D. LITTLE, INC., changed its name to DEHON, INC. following the sale of substantially all of its operating assets pursuant to an order of the Bankruptcy Court dated April 29, 2002.

Steven Meuneir, Office of the U.S. Trustee, Worcester, MA, United States Trustee.

## MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court is a "Motion to Certify Defendant Class" (the "Motion") filed by Stephen S. Gray, in his capacity as Plan Administrator (the "Plan Administrator") of the estate of Dehon, Inc. and its various debtor affiliates (jointly or singly, the "Debtor" or "Dehon").[1] The Motion arises from the "First Amended Class Action Complaint to Subordinate Claims Under 11 U.S.C. §§ 510(b) and (c)" (the "Amended Complaint"), wherein the Plan Administrator seeks mandatory certification of a single defendant class in order to simultaneously adjudicate certain claims under the subordination provisions of the Bankruptcy Code (the "Code").[2] The Plan Administrator also seeks this Court's authorization to devote $50,000.00 of the Debtor's funds to help pay the legal fees of the putative defendant class. The putative class representative (the "Putative Representative") filed a "Limited Opposition of Defendant Peter Shapiro and the Putative Class of Persons and Entities Similarly Situated to Plan Administrator's Motion for Class Certification" (the "Opposition") in response. While acknowledging the advantages of a class action in resolving the controversy, the Putative Representative argues for opt-out rather than mandatory

Douglas Rosner, Rafael I. Klotz, Kurt W. Hague, Goulston & Storrs, Boston, MA, for Stephen S. Gray, Liquidating Plan Administrator.

Annapoorni R. Sankaran, Greenberg Traurig, LLP, Boston, MA, for Peter Shapiro, Class Representative.

1. On February 14, 2003, the Court entered an Order confirming the "Modified Second Amended Plan of Liquidation of Dehon, Inc. (F/K/A Arthur D. Little, Inc.) And Its Debtor Subsidiaries." Pursuant to the confirmed plan, the Court appointed Stephen S. Gray as Plan Administrator.

2. The Plan Administrator describes the putative defendant class as all current and former beneficiaries and fiduciaries of various employee stock ownership plans (the "Stock Plans") who filed claims against the Debtor based upon their participation in those Stock Plans. The Stock Plans were all created prepetition by Debtor on behalf of various employees. The putative class members are more definitively described later in the decision. *See infra* Part II.

class certification, the creation of a number of sub-classes based upon purported factual and legal distinctions between putative class members, and an increase in the Plan Administrator's $50,000 offer to fund the legal costs of the putative defendants.

## I. FACTS AND TRAVEL OF THE CASE

On February 5, 2002, Dehon and seven of its affiliates filed petitions for relief under Chapter 11 of the Code.[3] On March 14, 2002, twelve additional affiliates of Dehon filed similar petitions for relief; the Debtors' cases are being jointly administered. On February 6, 2003, the predecessor Plan Administrator commenced this adversary proceeding by filing a "Complaint to Subordinate Claims Under 11 U.S.C. §§ 510(b) and (c)," the Motion,[4] a proposed "Notice of Class Certification," and "Plan Administrator's Memorandum of Law in Support of Its Motion to Certify Defendant Class."

On February 14, 2003, the Court confirmed the "Modified Second Amended Plan of Liquidation of Dehon, Inc.," appointing Stephen S. Gray as Plan Administrator. Thereafter, on March 19, 2003, the Plan Administrator filed the Amended Complaint and a "Motion to Substitute Party," naming himself as successor Plaintiff. On March 31, 2003, the Putative Representative filed the Opposition. On April 30, 2003, the Plan Administrator filed a "Reply Memorandum of Law in Support of Motion to Certify Class." On May 2, 2003, the Class Representative filed a "Sur–Reply." The Court thereafter heard the parties' oral arguments and took the matter under advisement.

## II. POSITIONS OF THE PARTIES

The Plan Administrator seeks class certification of a group of claimants that includes:

(a) all current and former direct or indirect holders of shares of common and/or preferred stock of Dehon, Inc. ("Dehon Stock") who have claims against any of the Debtors arising from the Debtors' obligation to redeem and/or repurchase any such shares,[5] . . . and

(b) all current and former holders of Dehon Stock who have claims against any of the Debtors arising from the exercise of, or right to ex-

---

3. Dehon was formerly known as Arthur D. Little, Inc. ("ADL"). At the time of its filing, ADL's history as a Massachusetts corporation dated back over one hundred and fifteen years. At one time, it was considered a premier international consulting firm advising businesses on the use of diverse technologies. Its name was changed to Dehon, Inc. following the sale of substantially all of its operating assets pursuant to this Court's order, dated April 29, 2002.

4. It should be noted that the predecessor Plan Administrator had proposed an erstwhile Trustee of one of the Stock Plans as the original putative class representative. That Trustee timely filed a proof of claim in the amount of $4,429,405.57, representing an aggregate amount for shares held by him on behalf of others for repurchase by Dehon. He was subsequently replaced with the present Putative Representative, a beneficiary of one of the Stock Plans. The Putative Representative has timely filed a claim in the amount of $76,398.53 based upon his participation in that plan as a former employee of Dehon.

5. These include, but are not limited to, (i) any former or current employees of any of the Debtors or the Debtors' affiliates, (ii) any trusts or plans established by any of the Debtors or the Debtors' affiliates to hold shares for the benefit of former or current employees of any such Debtors or affiliates, (iii) any trustees, administrators or other fiduciaries of any such plans or trusts that may have standing to assert claims against the Debtors for or on behalf of any current or former holders of Dehon Stock, and (iv) any beneficiaries of such trusts or plans.

ercise, any put or similar option for the redemption and/or repurchase of any such Dehon Stock before the Petition Date.

"Complaint To Subordinate Claims Under 11 U.S.C. §§ 510(b) and (c)" at 2–3.

In the Amended Complaint, the Plan Administrator states that all of the subject shares of Dehon stock are currently held by various Stock Plans established prepetition by Dehon and/or its affiliates on behalf of current and former employees. While several thousand former employees participated in such Stock Plans, only one thousand one hundred and seventy-six (1,176) claims based upon such participation were timely filed against Dehon by the July 16, 2002 bar date. The Plan Administrator argues that all of these claims are subject to subordination pursuant to 11 U.S.C. § 510(b) & (c).[6]

Stressing judicial economy, the Plan Administrator urges this Court to certify a defendant class in this case. The Plan Administrator maintains that, under the provisions of Fed.R.Civ.P. 23[7] as incorporated by Fed. R. Bankr.P. 7023, the four prong test for class certification under Rule 23(a) is met because: 1) there are 1,176 putative class members, satisfying the numerosity requirement; 2) there is only one question of law common to the class (i.e., whether the class members' claims are subject to subordination), satisfying the commonality requirement; 3) the Putative Representative's defenses are essentially identical to all other putative class members' defenses, satisfying the typicality requirement; and 4) the Putative Representative has no interests adverse to the class and will fairly and adequately protect the interests of the class. To that end, the Plan Administrator has offered a $50,000 subsidy for the Putative Representative's defense.

Moreover, the Plan Administrator argues that the class should be certified as a *mandatory* class under the provisions of Fed.R.Civ.P. 23(b)(1).[8] Throughout, the

---

6. In pertinent part, 11 U.S.C. § 510(b) & (c) states:

    (b) For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security ... shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security ... (c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or (2) order that any lien securing such a subordinated claim be transferred to the estate.
    11 U.S.C. § 510(b), (c).

7. Fed.R.Civ.P. 23(a) reads in pertinent part:
    [p]rerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative party will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a).

8. Fed.R.Civ.P. 23(b)(1)(A) and (B) states in pertinent part:
    (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: (1) the prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of

Plan Administrator has maintained that the Motion and Amended Complaint are intended to certify a class for the limited purpose of simultaneously adjudicating certain interests referred to as "Stock Repurchase Claims." "First Amended Class Action Complaint to Subordinate Claims Under 11. U.S.C. §§ 510(b) and (c)" at 3; "Reply Memorandum of Law in Support of Motion to Certify Class" at 4; "Notice of Class Certification" at 2. The Plan Administrator describes the scope of this adversary proceeding as "very narrow and limited to claims for redemption and/or repurchase of stock of Dehon," and, further, he "does not seek to subordinate other claims the [Putative] Representative or certain individual members of the proposed class may have against Dehon, if any, although [he] reserves the right to do so in the future." "Reply Memorandum of Law in Support of Motion to Certify Class" at 4–5. With respect to the Putative Representative's concerns that the putative class members might "potentially bring counterclaims in this adversary proceeding arising from breaches of fiduciary duty under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ('ERISA'), common law and/or foreign laws (the 'Fiduciary Claims')," the Plan Representative contends that, "[i]n the context of this proceeding, it would be inappropriate and premature for the Court to certify classes of yet-unasserted counterclaims." *Id.* The Plan Administrator concludes that certification of an opt-out class would be wasteful and counterproductive.

The Putative Representative claims not to be "opposed in principle to this case proceeding as a defendant class action in a single proceeding ... [recognizing] the benefit to a single proceeding to the participants of the benefit plans, and the substantial savings that the ... Plan Administrator will achieve by a single proceeding." "Limited Opposition of Defendant Peter Shapiro and the Putative Class of Persons and Entities Similarly Situated to Plan Administrator's Motion for Class Certification" at 2. However, judicial economy notwithstanding, the Putative Representative argues that the Plan Administrator's mechanical view of the issue involved is legally incorrect and that there exists a range of defenses and counterclaims available to the putative class members. "Sur–Reply of Defendant Peter Shapiro and the Putative Class of Persons and Entities Similarly Situated to Plan Administrator's Reply Memorandum of Law in Support of Motion to Certify Class" at 2.

The Putative Representative cautions that, given the diversity of claims and defenses available to the putative class members, the outcome of the Putative Representative's claim will not be dispositive of the other 1,175 claims; he argues that mandatory certification under 23(b)(1)(B) would be inappropriate under such circumstances. The Putative Representative suggests that several sub-classes are required to fully adjudicate the controversies. By way of illustration, the Putative Representative notes that some putative class members may have ERISA [9] claims seeking damages for predatory prepetition actions taken by former principals of the Debtor. Merely ruling on the subordination of Stock Repurchase Claims would not resolve such claims, he argues, and, given the factual and legal similarities such claims share with the claims and defenses

the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests

Fed.R.Civ.P. 23(b)(1)(A), (B).

**9.** Employee Retirement Income Security Act, 29 U.S.C. § 1132(a) (2000).

of other putative class members, judicial economy dictates certification of several opt-out sub-classes under Fed.R.Civ.P. 23(b)(3).[10]

The Putative Representative further contends that, while a class action may be preferable, certification at this time would be premature. In support of this contention, the Putative Representative argues that all the putative class members have not yet been identified. The Putative Representative maintains that the complexity of the issues involved, world-wide distribution of putative class members, and the need to refine proofs of claims to accurately reflect their legal basis caution against class certification at this time.

Finally, given the foregoing, the Putative Representative declares the $50,000 subsidy offered by the Plan Administrator inadequate to perform the discovery necessary to flesh out the multifarious defenses and counterclaims. Instead, the Putative Representative proposes that the case go forward without any cap on fees or costs, leaving final allowance to the Court by way of fee applications consistent with Massachusetts Bankruptcy Local Rule ("MBLR") 2016–1.

## III. *DISCUSSION*

There are several overlapping issues presented. Initially, the Court must decide whether to certify a defendant class and/or sub-classes. Further, the Court must determine whether such a class or classes should be maintained on a mandatory or opt-out basis. And, finally, the Court must determine whether the subsidy offered by the Plan Administrator to the Putative Representative is sufficient.

### A. *Pre-requisites to Class Certification under Fed.R.Civ.P. 23(a)*

Certification of defendant and plaintiff classes under Fed.R.Civ.P. 23 is governed by the same two-part analysis. *Tilley v. The TJX Companies, Inc.*, 212 F.R.D. 43, 45–46 (D.Mass.2003); *Schneider v. Margossian*, 349 F.Supp. 741 (D.Mass.1972); *Dale Electronics, Inc. v. R.C.L. Electronics, Inc.*, 53 F.R.D. 531, 533–35 (D.N.H.1971); *In re Integra Realty Resources, Inc.*, 179 B.R. 264, 269 (Bankr. D.Col.1995); 7A Wright, Miller & Kane, *Federal Practice & Procedure*, § 1770, 395 (2002) (describing the "sue or be sued" language of Rule 23 as authorizing the certification of defendant classes). Certification is permitted if: the putative class satisfies the Rule 23(a)(1) & (2) prerequisites of numerosity and commonality; the class representative satisfies the Rule 23(a)(3) & (4) prerequisites of typicality and adequacy of representation; *and* the class fits into one of the three categories of 23(b). *TJX Companies*, 212 F.R.D. at 46.

At the outset, the Court is mindful of the Supreme Court's admonition in *Eisen*

---

**10.** Fed.R.Civ.P. 23(b)(3) states in relevant part:

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.
Fed.R.Civ.P. 23(b)(3).

*v. Carlisle & Jacquelin* that it has no "authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). In a subsequent ruling, however, the Supreme Court held that the rigorous analysis required under Rule 23 sometimes involves "considerations that are enmeshed in the factual and legal issues comprising the [underlying] cause of action." *General Telephone Co. v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Ultimately, a line of cases interpreting *Eisen* through the lens of *General Telephone* has concluded that a court must formulate some prediction about the probable course of litigation in a case if it is to correctly determine class certification. *Waste Management Holdings, Inc. v. Mowbray,* 208 F.3d 288, 297–98 (1st Cir.2000); *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 598–99 (7th Cir.1993).

### 1. *Numerosity*

■ It seems clear that a class with over one thousand members, as is the case here, easily satisfies the numerosity requirements of Rule 23(a)(1). In comparison, the *Dale Electronics* court certified a defendant class consisting of only thirteen members. 53 F.R.D. at 534; *see also Citizens Banking Co. v. Monticello State Bank,* 143 F.2d 261 (8th Cir.1944) (certifying, under the predecessor to Rule 23, a twelve person class); *In re Braniff Airways,* 22 B.R. 1005, 1008 (Bankr.N.D.Tex. 1982) (certifying a defendant class of over 1000 members). While the actual number of putative class members is a consideration, the impracticality of joinder of those members, owing to geographic dispersal, is of greater import. *Demarco v. Edens,* 390 F.2d 836, 845 (2nd Cir.1968); *Dale Electronics,* 53 F.R.D. at 534. The putative class members in the instant case live not only throughout the United States but in other countries; certification is appropriate because joinder here is "not only impracticable, but impossible." *Dale Electronics,* 53 F.R.D. at 534.

■ While this geographic dispersal raises legitimate concerns, it should be remembered that the United States Bankruptcy Court operates with the benefit of nationwide service of process; "all that is needed is sufficient contacts with the United States, not the state where the bankruptcy case is pending." *Integra Realty* 179 B.R. at 268. This Court's jurisdiction extends to foreign defendants as well under the same contacts analysis. *Id.; but cf. Stonington Partners Inc. v. Lernout Hauspie Speech Products N.V.,* 310 F.3d 118 (3rd Cir.2002) (directing the bankruptcy court on remand to conduct choice of law analysis to accommodate parallel bankruptcy proceeding in Belgium). Furthermore, the Court can order notice to all class members as a condition of certification to ensure that due process requirements are met. Fed. R. Civ. P 23(d); *In re Gap Stores,* 79 F.R.D. 283, 292 (N.D.Cal.1978).

### 2. *Commonality*

■ Commonality is satisfied if there are issues of law or fact common to the members of the class. *Blake v. Arnett,* 663 F.2d 906, 912 (9th Cir.1981); *Dale Electronics,* 53 F.R.D. at 536. This does not mean that all class members have in common *all* questions of fact and law. *In re Broadhollow Funding Corp.,* 66 B.R. 1005, 1009 (Bankr.E.D.N.Y.1986). In fact, despite some factual differences between the members of the class, commonality can still exist for purposes of 23(a)(2). *Forbush v. J.C. Penney Co.,* 994 F.2d 1101, 1106 (5th Cir.1993) (holding that commonality existed for a class action ERISA

claim despite the fact that at least four different pension plans were involved).

■ The parties agree that all of the putative class members have interests in Dehon stock held for them or by them in a variety of Stock Plans. The Amended Complaint seeks to subordinate all of those claims to the claims of the general unsecured creditors under two Code provisions, § 510(b) and (c). Given the nature of those claims, this Court can reasonably infer that certain defenses of the individual members of the putative class to Dehon's subordination strategy will be available to every other member. Accordingly, commonality is established for the purposes of Rule 23(a)(2).

### 3. Typicality

■ Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). Unlike the first two requirements under 23(a), typicality is a condition of the representative, not the class. *Edmondson v. Simon*, 86 F.R.D. 375, 381 (N.D.Il.1980). Satisfaction of typicality does not require factual and legal replication of all class members' claims in the putative representative's claim, but, rather, it may be achieved if the claims arise from the same practice, event, or course of conduct and are based on the same legal theory. *Id.* at 381. Typicality can be satisfied if the putative representative's claims and legal theories do not actually conflict with other class members, thereby prejudicing their claims. *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 57 (3rd Cir.1994); *Kline v. Security Guards, Inc.*, 196 F.R.D. 261, 265 (E.D.Pa.2000).

■ Here, the Putative Representative, a former employee of the debtor, has filed a claim for $76,398.53 based upon his status as a beneficiary of a Stock Plan. On the record before the Court, it can be anticipated that his defenses to Dehon's attempted subordination of Stock Repurchase obligations will be typical of all other Stock Plan beneficiaries/employees of the debtor. Other counterclaims and defenses based upon ERISA violations or foreign law that may or may not be available to the Putative Representatives or other putative class members have *not yet* been asserted. Further, if due process or class maintenance concerns later arise, the Court may always cure factual or legal variations between class members by de-certification, in whole or in part, or by the creation of sub-classes, as the situation warrants. *Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2nd Cir.1999); *Barnes v. American Tobacco Co.*, 161 F.3d 127, 140 (3rd Cir.1998); *In re Agent Orange Product Liab. Litig.*, 818 F.2d 145, 163 (2nd Cir.1987); *Woe v. Cuomo*, 729 F.2d 96, 107 (2nd Cir.1984).

### 4. Fairly and Adequately Protect

■ Adequate representation under Rule 24(a)(4) has two prongs: 1) an assurance of the ability of both the class representative and its counsel to conduct the litigation; and 2) an absence of conflict between the class representative and the putative class members. *Integra Realty*, 179 B.R. at 270–71. Significant in this inquiry is: whether the putative class representative has a substantial claim to defend; whether there exists any collusion between the putative class representative and the Plaintiff; and whether the putative class representative has the resources to conduct the litigation fully. *In re Cardinal Indus., Inc.*, 105 B.R. 834, 844 (Bankr. S.D.Ohio 1989). Notably, some courts have held adequacy of resources to be of lesser import in light of their authority to remove the putative representative for cause. *TJX Companies*, 212 F.R.D. at 47.

■ The Putative Representative has a claim of $76,398.53, not an insignificant sum of money and certainly worth defending; he would, it seems, be highly motivated. There is no evidence of any collusion between the Putative Representative and the Plan Administrator. Counsel for the Putative Representative is a highly skilled and well regarded firm in the litigation of bankruptcy matters. Also, the Putative Representative has at least $50,000 at his disposal, courtesy of the Plan Administrator, with which to conduct his defense of the class. Resources necessary to sustain an adequate defense do not appear to be an issue. And to the extent that a later conflict should develop (e.g., if class members assert claims against each other or assert that, on account of such claims, the Putative Representative may not be well-suited to safeguard the rights of particular class members) that threatens the integrity of the class, the Court has, as discussed *infra*, the tools with which to properly protect the due process rights of the affected class members.

B. *Class Actions Maintainable under Fed.R.Civ.P. 23(b).*

1. *Mandatory Classes under Rule 23(b)*

■ Under Rule 23(b)(1)(A), certification of a mandatory class is authorized if separate actions run the risk of "inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." Fed.R.Civ.P. 23(b)(1)(A). Alternatively, under Rule 23(b)(1)(B), a mandatory class action may be maintained if separate actions would create the risk of "adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests." Fed. R.Civ.P. 23(b)(1)(B).

The Plan Administrator has met both tests. The Plan Administrator is duty bound to review the validity of each claim filed in these cases. Those to which the Plan Administrator does not object are allowed as a matter of law. 11 U.S.C. 502(a). Presently, 1,176 unsecured claims seek a distribution from the estate based exclusively on alleged stock repurchase rights. Yet the claims of all unsecured claims are interrelated in the sense that, if and when they are finally allowed, the dividend to each will be determined by a fraction, the numerator of which is the amount of the allowed individual claim and the denominator the total of all allowed claims. Were some of the 1,176 stock repurchase claims allowed and others disallowed based on the same theory of subordination, the Plan Administrator would be compelled to bring every one of the stock repurchase claims before the Court to obtain a ruling. Stare decisis [11] would be of no value whatsoever, and the distribution on each of the allowed unsecured claims (regardless of whether stock repurchase in nature) would be impacted by which of the stock repurchase claims, albeit identical in nature, were or were not allowed. Further, the cost of bringing each and every

11. Many courts have held that stare decisis alone will not suffice to create a mandatory class. *See La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 467 (9th Cir.1973); *but see In re Alexander Grant & Co. Litig.*, 110 F.R.D. 528, 538 (S.D.Fla.1986). The *Alexander Grant* court disagreed with the restrictive view of Rule 23(b)(1)(B) taken by the *La Mar* court, noting if mere stare decisis alone was not enough to certify a mandatory class then the sub-section would be reduced to "mere surplussage." *Alexander Grant & Co.*, 110 F.R.D. at 538.

such claim before the Court would impact and impair the distribution to each and every unsecured creditor in the case, whose dividend is ultimately determined by what is left after administrative costs have been paid.

The only practical approach to the disposition of the stock repurchase claims is to adjudicate whether they may be subordinated—*once.* It is also the best way to protect the estate against unreasonable costs, and the best way to protect creditors of the estate from one another. For those reasons, the Court will certify the putative class as mandatory under Rule 23(b)(1)(A) and (B).

## C. *Debtor Subsidy of the Defendant Class*

■ Finally, the Court is presented with the rather novel issue of how much estate property to allocate to the Putative Representative for his attorneys fees in defending the putative class. The Plan Administrator says that $50,000 should be enough. The Putative Representative is alarmed by that limitation.

At the outset, this Court views the Plan Administrator's offer as generous. The only matter before the putative class is whether the stock repurchase claims should be subordinated. Nothing else is now before the Court. Yet, clarity is often better achieved after events have unfolded rather than before. Just as the Plan Administrator discounts the Putative Representative's concerns about counterclaims not yet raised, so the Plan Administrator can not reasonably prognosticate the cost to either party of dealing with unasserted counterclaims. Notably, the Plan Administrator has not suggested a cap on *his* costs in prosecuting this proceeding.

There is no reason for imposing a compensation cap. Bankruptcy courts are quite expert in evaluating requests for re-imbursement and compensation on their merits. In the case at bar, counsel for the Putative Representative will be performing services that: 1) are requested by the estate representative; 2) will reduce the cost to the estate of litigating with likely hundreds of creditors; and 3) may ultimately shorten the time necessary to complete the case. All things considered, the Putative Representative, a creditor, will, by his participation, render a "substantial contribution" that will benefit this Chapter 11 estate. See 11 U.S.C. § 503(b)(3)(d) and (b)(4). His costs, including reasonable compensation for his counsel, ought to be compensated. This is not, however, a blank check. This Court will compensate the Putative Representative and his counsel on the basis of and employing the standards for fee applications as set forth in MBLR 2016–1. The Court will closely review any such request for conformity with the appropriate Code provisions, Federal Rules of Bankruptcy Procedure, MBLR, and applicable case law.

## IV. *CONCLUSION*

Based upon the foregoing analysis, the Court will:

1) Certify a mandatory defendant class to defend the Plan Administrator's complaint to subordinate the Stock Repurchase Claims to the claims of general unsecured creditors; and

2) Authorize the use of estate funds to fund the actual necessary expenses of the Putative Representative, including his reasonable attorneys fees, in an amount to be determined upon the allowance of a fee application conforming to MBLR 2016–1.

An order will issue in conformance with this Memorandum of Decision.

## *ORDER*

This matter came for hearing before the Court on May 6, 2003 (the "Hearing") upon the Motion, as supplemented, of the Official Committee of Unsecured Creditors (the "Committee"), the original plaintiff (the "Plaintiff") in the above-captioned complaint, to subordinate certain claims of the defendants under 11 U.S.C. § 510(b) and (c) (the "Complaint"), for certification of a single class of defendants, to name the representative of said class of defendants, and to allow the Debtors to subsidize the Class Representative's actual legal fees and costs incurred in defending against the Complaint; due notice of the Motion and the Supplement to the Motion and the relief requested therein and an opportunity to object having been given; and based on the Motion, the Supplement to the Motion, the Memorandum of Law in Support of the Motion, and the responsive motions and briefs filed by counsel for the Putative Class Representative, the arguments of counsel, and the record before the Court,

**THE COURT FINDS THAT:**

1. The proposed class action complaint satisfies the requirements of Fed.R.Civ.P. 23(a) and (b), as adopted by Fed. R. Bankr.P. 7023;

2. The proposed class of defendants (the "Class") is so numerous and geographically dispersed that joinder of all members is impracticable;

3. There are questions of law and fact common to all Class members;

4. The defenses of Peter D. Shapiro, the Putative Class Representative, are typical of the defenses of the Class;

5. Peter D. Shapiro (the "Class Representative") will fairly and adequately represent the interests of the Class;

6. The prosecution of separate actions by or against individual members of the Class would create the risk that adjudications with respect to individual members of the Class would as a practical matter be dispositive of the interests of the other members not parties to the adjudications, or may be inconsistent or varying, or substantially impair or impede the ability of Class members to protect their interests;

7. The questions of law and fact common to the members of the Class predominate over any questions *currently* before the Court affecting only individual members, and a class action is superior to other methods for fair and efficient adjudication of the controversy;

8. The proposed use of estate funds to subsidize the Class Representative's actual legal fees and costs is: 1) reasonable under the circumstances; 2) in the Plaintiff's and the Debtors' exercise of their reasonable business judgment; and 3) will likely reduce the cost the Debtors' estates would ultimately have to bear if each of the Class members' claims were to be litigated individually; and

9. The notice to members of the Class, attached hereto as "Notice Of Class Certification" (the "Notice"), is sufficient under the circumstances to inform them about the Complaint.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Motion is granted, except as inconsistent with the terms of this Order.

2. The Class in the Complaint, as amended, is certified as follows: a) all current and former direct or indirect holders of shares of common and/or preferred stock of Dehon, Inc. ("Dehon Stock") who have claims against any of the Debtors arising from the Debtors' obligations to redeem and/or repurchase any such shares, including, but not limited to: (i) any former or current employees of any of the Debtors or the Debtors' affiliates, (ii)

any trusts or plans established by any of the Debtors or the Debtors' affiliates to hold any such shares for the benefit of former or current employees of any such Debtors, including, without limitation, those trusts and plans listed on *Exhibit A,* attached herein to the Notice, (iii) any trustees, administrators, or other fiduciaries of any such plans or trusts that may have standing to assert claims against the Debtors for or on behalf of any current or former holders of Dehon Stock, (iv) any beneficiaries of such trusts or plans; and b) all current and former holders of Dehon Stock who have claims against any of the Debtors arising from the exercise of, or right to exercise, any put or similar option for the redemption and/or repurchase of any such Dehon Stock before the Petition Date.

3. The Class is certified under Fed. R.Civ.P. 23(a) and 23(b)(1). Accordingly, no member of the Class shall be permitted to opt out of the Class, and each and every member of the Class shall be bound by all orders or judgments of this Court in this adversary proceeding. At any time during the proceedings, the Court may, upon motion or *sua sponte*, exercise its discretion under Fed.R.Civ.P. 23(c) and (d) to decertify the Class, create sub-classes, remove or replace the Class Representative, or otherwise condition the conduct of this adversary proceeding in order to fairly and adequately protect the rights of the Class members.

4. The Plan Administrator is hereby substituted for the Committee as the Plaintiff in this adversary proceeding. The Plan Administrator's role as Plaintiff in, and his prosecution of, this adversary proceeding shall not subject him to any liability, fine, penalty, and/or claim or be deemed to be a breach of any of his duties or obligations as the plan administrator or fiduciary of the Debtors' Employee Stock

Ownership Plan or other stock, pension and/or retirement plans, whether or not qualified under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.

5. Peter D. Shapiro is appointed as the Class Representative, and the law firm of Greenberg Traurig LLP (the "Class Counsel") is authorized to act as counsel for the Class Representative.

6. The Debtors are authorized to utilize estate funds to pay Class Counsel for legal fees and costs incurred by the Class Representative, provided that such fees and costs are allowed by this Court upon fee applications that satisfy the requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Massachusetts Bankruptcy Local Rules ("MBLR"), including, without limitation, MBLR 2016–1 and applicable case law in this District.

7. Plaintiff shall forthwith provide notice, by first class mail, to every ascertainable member of the Class that filed a Proof of Claim, according to the records of the Claims Agent appointed in the Debtors' cases, in the form attached hereto as Notice, which form of notice is hereby approved; and Plaintiff shall within 20 days thereafter file a certificate of such service.

*CLASS ACTION COMPLAINT*

**NOTICE OF CLASS CERTIFICATION**

PLEASE TAKE NOTICE THAT:

1. On September 10, 2003 the United States Bankruptcy Court for the District of Massachusetts, Western Division, (the "Bankruptcy Court") entered an order (the "Order") certifying a class of defendants (the "Class") in the above referenced class action brought by the Plan Administrator of Dehon, Inc. (the "Plan Administrator") in the above-referenced Debtors' cases un-

der chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). You are receiving this notice because, according to the Debtors' records, you hold a Stock Repurchase Claim (as defined in Paragraph 3 below) and, therefore, are a member of the Class of defendants in this proceeding.

2. The Class consists of: (a) all current and former direct or indirect holders of shares of common and/or preferred stock of Dehon, Inc. ("Dehon Stock") who have claims against any of the Debtors arising from the Debtors' obligation to redeem and/or repurchase any such shares, including, but not limited to, (i) any former or current employees of any of the Debtors or the Debtors' affiliates, (ii) any trusts or plans established by any of the Debtors or the Debtors' affiliates to hold any such shares for the benefit of former or current employees of any such Debtors, including, without limitation, those trusts and plans listed on *Exhibit A* hereto (the "Stock Plans"), (iii) any trustees, administrators or other fiduciaries of any such plans or trusts that may have standing to assert claims against the Debtors for or on behalf of any current or former holders of Dehon Stock, (iv) any beneficiaries of such trusts or plans; and (b) all current or former holders of Dehon Stock who have claims against any of the Debtors arising from the exercise of, or right to exercise, any put or similar option for the redemption and/or repurchase of any such Dehon Stock before the Petition Date.

3. In its complaint, the Plan Administrator seeks to subordinate the claims of Class members against one or more Debtors arising from the alleged obligations of Dehon, Inc. (f/k/a Arthur D. Little, Inc.)("Dehon") to repurchase or redeem shares of Dehon Stock that were put to Dehon by members of the Class or for which members of the Class may have the

right under the terms of a Stock Plan to put to Dehon (collectively, the "Stock Repurchase Claims"). If the Plan Administrator prevails in the complaint, the Stock Repurchase Claims will be subordinated to general unsecured non-priority claims against the Debtors (the "General Unsecured Claims"). This means that members of the Class would not receive any distributions in connection with the Stock Repurchase Claims unless and until holders of allowed General Unsecured Claims are paid in full. If, on the other hand, the Class prevails, the Stock Repurchase Claims will be treated as having equal priority with the General Unsecured Claims for purposes of any distributions under the plan of liquidation. THE COMPLAINT DOES NOT SEEK A DETERMINATION OF THE VALIDITY OF THE STOCK REPURCHASE CLAIMS BUT ONLY SEEKS A DETERMINATION OF THE PRIORITY THAT SUCH CLAIMS SHOULD BE AFFORDED UNDER THE BANKRUPTCY CODE.

4. The Bankruptcy Court has approved certification of the Class under Federal Rule of Civil Procedure 23(a) and 23(b)(1), as adopted by Federal Rule of Bankruptcy Procedure 7023. Accordingly, no member of the Class will be permitted to opt out of the Class and each and every member of the Class will be bound by any and all orders and judgments of the Bankruptcy Court in this adversary proceeding.

5. The representative of the Class (the "Class Representative") is Peter D. Shapiro, or any successor thereof. Counsel to the Class Representative and on behalf of the entire Class is the law firm of Greenberg Traurig LLP, One International Place, 3rd Floor, Boston, Massachusetts 02110, Annapoorni R. Sankaran, Esq.

4. The deadline for the Class Representative to answer or otherwise respond to the Plan Administrator's complaint is

October 24, 2003. The Class Representative will answer the Complaint on behalf of the entire Class. You do not have to appear or file any pleadings in response to the Complaint.

5. All pleadings filed in this adversary proceeding are available for inspection at the Clerk's Office of the United States Bankruptcy for the District Massachusetts, Western Division, Donahue Federal Building, 595 Main Street, Worcester, Massachusetts, 01608, on business days from 8:30 a.m. until 4:30 p.m. You may also contact the Class Representative or his counsel if you have any questions.

### EXHIBIT A

### STOCK PLANS

### ERISA QUALIFIED STOCK PLANS

Arthur D. Little, Inc. Employee Stock Ownership Plan, as amended and restated through the Twelfth Amendment

The Arthur D. Little, Inc. Employees' MDT Retirement Plan, as amended and restated through the Fifty-sixth Amendment—investment option for plan

### OTHER STOCK PLANS (NON–ERISA QUALIFIED)

Arthur D. Little, Inc. Senior Staff Stock Purchase Plan

Arthur D. Little, Inc. 1995 Stock Incentive Plan

Arthur D. Little, Inc. IA Stock Acquisition Plan

Arthur D. Little, Inc. 1988 Stock Purchase Plan

Arthur D. Little, Inc. Directors Stock Plan

Arthur D. Little, Inc. 1996 Dividend Reinvestment Plan

Arthur D. Little, Inc. CSC Stock Acquisition Plan

Arthur D. Little, Inc. Stock Retention Purchase Plan

Arthur D. Little, Inc. Contactica Stock Acquisition Plan Purchase Agreement

Instrument of Participation supplemental to the "Arthur D. Little Jersey Benefit Trust" establishing the "Employee Stock Account Plan–Sweden"

Deferred Compensation Plan for Selected Staff of Arthur D. Little, Inc.

Arthur D. Little, Inc. Senior Staff Tax–Deferred Stock Retention Plan

Arthur D. Little, Inc. Stock–Based Deferred Compensation Plan Number Two (Trust under Arthur D. Little, Inc. Stock–Based Deferred Compensation Plan Number Two)

Arthur D. Little, Inc. Stock–Based Deferred Compensation Plan Number Three

Arthur D. Little, Inc. Stock–Based Deferred Compensation Plan Number Four

Arthur D. Little, Inc. Stock–Based Deferred Compensation Plan Number Five

Compensation Plan for Directors of Arthur D. Little, Inc. (Trust under Compensation Plan for Directors or Arthur D. Little, Inc.)

Excess Contribution of Arthur D. Little, Inc. (Trust under Excess Contribution Plan of Arthur D. Little, Inc.)

Arthur D. Little, Inc. Stock–Based Deferred Plan for Incentive Compensation (Trust under Arthur D. Little, Inc. Stock–Based Deferred Plan for Incentive Compensation)

Arthur D. Little, Inc. Stock–Based Deferred Plan for Incentive Compensation for the United Kingdom

Arthur D. Little, Inc. Employee Stock Ownership Plan Equivalent for Employees of Arthur D. Little (Japan), Inc.

**222**

Arthur D. Little Employee Stock Ownership Plan Equivalent for Employees of the Italian Branch of Arthur D. Little International, Inc.

The Jersey Benefit Plan of Arthur D. Little International, Inc.

Instrument of Participation supplemental to the "Arthur D. Little Jersey Benefit Trust" establishing the "Employee Stock Account Plan–Sweden"

Arthur D. Little Switzerland Stock–Based Plan for Incentive Compensation

Arthur D. Little Germany Stock–Based Deferred Plan for Incentive Compensation

Arthur D. Little International, Inc. Latin American Tax Deferred Stock Based Accrual Plan

Arthur D. Little, Inc. Employee Stock Ownership Plan Equivalent for Employees of Arthur D. Little (Japan), Inc.

Arthur D. Little Employee Stock Ownership Plan Equivalent for Employees of the Italian Branch of Arthur D. Little International, Inc.

Arthur D. Little, Inc. Stock–Based Deferred Plan for Incentive Compensation for Spain

Rules of the Brazil Retirement Plan

Arthur D. Little Switzerland Stock–Based Plan for Incentive Compensation

Arthur D. Little International, Inc. Latin American Tax Deferred Stock Based Accrual Plan